Clifton et al., vs. Holton, adm'r.

---

GABRIEL CLIFTON, and others, plaintiffs in error, vs. ROBERT O. HOLTON, administrator, *de bonis non*, &c., defendant in error.

27    321
116    261

S. H. executed his will and died. By the 3d item, he bequeathed to J. F. H., his only child, certain property; and by the 6th item, he directs as follows: "In case my son S. dies before he arrives at twenty-one years of age, and without issue, all the property given herein before to my said son, I give and devise to my blood relations, of nearest kin, to be equally divided among them. J. F. H. died under twenty-one years of age, and without issue. At the time of the execution of the will and death of the testator, M. H., a widow, was the only surviving brother or sister of the testator. She had children. There were two families of nephews and nieces, the children of deceas_ ed sisters. The parents of testator were both dead. All of the foregoing facts, it was agreed, were well known to the testator at the time he made his will. After the death of testator and while his son was still in life, the only surviving sister died.

*Held*, That the children of M. H. were not entitled to the whole of the contingent legacy, but that the families of the other two sisters were entitled to participate.

VOL. XXVII.—21.

In Equity, in Houston Superior Court. Decision on demurrer, by Judge LAMAR, at November Term, 1858.

Gabriel Clifton, and others, children of Nancy Clifton, deceased, filed this their bill against Robert O. Holton, administrator, *de bonis non*, with the will annexed, of Samuel Holton, deceased, for their share of a legacy, claimed by them as remaindermen, under the will of said Samuel.

The bill states that testator duly made and executed his last will and testament, the *first of June, eighteen hundred and forty-six*, and died in August thereafter, leaving said will in full force and unrevoked.

That the third item of said will, is as follows:

"*Item Third:* I give and devise to my son James Fitzgerald Holton, Mat a negro man; Amy, a negro woman and her natural increase; also, her children, namely: Bob, a boy, and Wiley, a boy, Harriet, a girl, Dave, a boy, and Sarah, a girl. I also give and devise to my said son, two tracts or lots of land," (describing them,) that in and by the sixth item of said will testator bequeathed, as follows: "*In case my son James die before he arrives at twenty-one years of age, and without issue, all the property herein before given to my said son James, I give and devise to my blood relations of nearest kin, to be equally divided among them.*"

The bill states that testator died leaving but one child, the said James Fitzgerald, and that when said will was executed, and at the time of his death, the only and nearest blood relations he had, exclusive of his said son, were a sister, Mrs. Margaret Holton, and the nephews and nieces of two pre-deceased sisters, Mrs. Taylor and Mrs. Nancy Clifton. That there were, and are now, four children of Mrs. Taylor, and complainants, seven in number, are the children of Nancy Clifton. That Margaret Holton, the last surviving sister of testator, died in 1851, leaving six children. That James Fitzgerald Holton died in 1855, before arriving at the age of twenty-one years, and without issue. That after his

death, the defendant, Robert O. Holton, a son of said Margaret, took out letters of administration *de bonis non*, with the will annexed, on the estate of Samuel Holton, and possessed himself of all the property, real and personal, bequeathed to said James, as aforesaid.

The bill states that complainants are entitled, as "*blood relations of nearest kin*" to testator, to an equal share of said legacy with the children of Margaret Holton and Jane Taylor, to be divided amongst all *per capita.*

To this bill the defendant demurred for want of equity, in this, that complainants were not entitled to any part of said legacy, but upon the death of James Fitzgerald Holton, the same vested solely and absolutely in children of Margaret Holton, the sister of testator, the nearest blood relation at the time the will was executed, and at the period of testator's death.

After argument, the Court sustained the demurrer, and dismissed the bill, and counsel for complainants excepted.

SAMUEL D. KILLEN, for plaintiff in error.

JNO. M. GILES, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

The question in this case is not without embarrassment. Several propositions insisted on by the counsel for the Holtons, may be connected for the purposes of this decision. It may be granted that "the blood relations of nearest kin," to the testator, are to be ascertained and fixed at the time of his death, and not the death of his *son ;* a rather debateable point. The words of the will are, "*in case,* my son dies," I then give over this property "to my blood relations," &c. The division contemplated, is evidently at the death of the son, and why not the gift over to those who answer to the description of nearest blood relations at that time ?

Yield, also, that "*relations*" may be read in the singular, although there is no reason for making the substitution in this case; nay, concede that if the item of the will had stopped at the first clause, "my blood relations of nearest kin," that the sister would have taken—and this we apprehend is all and more, perhaps, than can be fairly claimed: still we think the case is with the complainants.

We must give effect to all the words in the will. And in this, as in thousands of cases, the context or explanatory words must control the technical terms of the testament. Dying without issue, which taken by themselves would create a perpetuity, are often enlarged by superadded words, so as to constitute a good remainder over.

It is agreed on the record, that the testator knew that he had an only sister living, and no brother; that his parents were dead, so that there could not possibly be another brother or sister. Could he have intended to restrict his bounty to that only sister, and yet give the property to his blood *relations* of nearest kin, and direct it "to be *equally* divided among them?" must he not of necessity have contemplated and intended to have provided for more legatees than *one?* He not only employs the plural, relations, but he directs an *equal division* to be made. A gift to one, is utterly inconsistent with the idea of a *division*, much less an *equal* division, when that one takes the whole, and that is not all, it is to be an equal division among "*them*," that is, the blood relations already mentioned.

Policy favors the subdivision of property. Courts should, in this country, lean to that interpretation of wills, which carries out the provisions of the statute of distributions, rather than to that which defeats them. For this statute after all, is our American Magna Charta; doing more to perpetuate our republican institutions than the Constitution. For without the accumulation by law of property, in the hands of the few, there can be no privileged classes.

Justice and equity favor this construction, why should not

all who stand in the same degree of relationship to the testator, at the time this estate took effect, share alike in his bounty? Why should one family of nephews and nieces, the children of a deceased sister get all, while two other families of nephews and nieces, the children also of deceased sisters, get nothing? It is not in such cases that Courts convert the plural into the singular number—but to prevent a failure of testamentary disposition.

The testator had but one object in view, to exclude his wife and her kin from any further participation in his property. He provided handsomely for her, and gave a small legacy to a daughter, probably by a previous marriage. He did not intend *them* to come in again. Hence the employment of the terms, "blood relations." It was not so much to designate which of his blood kin should take, as to shut out those who should not. This is the key to the will.

> Judgment reversed.