No. 44.—WM. A. REDD and others, plaintiffs in error, *vs.* DAVID CLOPTON and others, defendants in error.

,[1.] The estate of an intestate dying without wife or child, or the descendants of children, and without father or mother, brother or sister, shall be distributed to and among all the cousins of the deceased equally, including those on the *maternal* as well as the *paternal* side.

In Equity, in Muscogee Superior Court. Tried before Judge WORRILL, December Term, 1854.

Martin J. Kendrick died, leaving his cousins as next of kin. On a bill for direction filed by the administrator, the Court charged the Jury, that cousins on the paternal side took in preference to and the exclusion of cousins on the maternal side.

This is the only error assigned.

Judge BENNING having been of Counsel, did not preside in this case.

INGRAM & CRAWFORD; HOLT & WELBORN, for plaintiffs.

DOUGHERTY, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The only question made before this Court is, whether, in the distribution of the estate of an intestate, who dies leaving neither wife nor child, father nor mother, brother nor sister,

nor the representatives thereof, the cousins of the *paternal*, shall inherit to the exclusion of those of the maternal line?

And the answer must depend upon the construction of the Act of 1804, and the Statutes amendatory thereto.

By the Act of 1804, it is provided, that " when any person, holding real or personal estate, shall depart this life intestate, the said estate, real and personal, shall be considered as altogether of the same nature and upon the same footing. So that in case of there being a widow and child or children, they shall draw equal shares thereof, unless the widow shall prefer her dower—in which event, she shall have nothing farther out of the real estate than such dower: but shall, nevertheless, receive a child's part or share out of the personal estate. And in case any of the children shall die before the intestate, their lineal descendants shall stand in their place or stead. In case of there being a widow and no child or children, or representative of children, then the widow shall draw a moiety of the estate, and the other moiety shall go to the next of kin in equal degree, and their representatives. If no widow, the whole shall go to the child or children. If neither widow, child or children, or the legal representatives of the children, the whole shall be distributed among the next of kin, in equal degree, and their representatives: but no representation shall be admitted among collaterals, farther than the child or children of the intestate's brothers and sisters. If the father or mother be alive and a child dies intestate and without issue, such father, or mother in case the father be dead, and not otherwise, shall come in on the same footing as a brother or sister would do: *provided,* that such mother, after having intermarried, shall not be entitled to any part or proportion of the estate of a child who shall die intestate and without issue: but the estate of such child shall go to and be vested in the next of kin on the side of the father. *And provided also,* that on the death of the last child intestate and without issue, the mother shall take no part of his or her estate, but the same shall go to and be vested in like manner in the next of kin on the father's side. And in case a person dying without issue, lea-

ving brothers and sisters of the whole and half blood, then the brothers and sisters of the whole and the half blood, in the paternal line only, shall inherit equally : but if there shall be no brother or sister, or issue of brother or sister, of the whole or half blood in the paternal line, then those of the half blood and their issue in the maternal line shall inherit. *The next of kin shall be investigated by the following rules of consanguinity, viz : children shall be nearest ; parents, brothers and sisters shall be equal in respect to distribution ; and cousins shall be next to them."* (*Cobb's Digest*, 291–2.)

This act of distributions, it will be perceived, is almost a literal transcript of the English Statute of 22 and 23, *Charles II.* which was borrowed from the 118th Novel of Justinian. And it is admitted on all sides that in the distribution of *personal* property, both by the Civil and Common Law, the preference of males over females is superceded. To re-establish this rule of feudal origin and policy, so partial, unnatural and harsh in its principle and operation, would require language so plain that he who runs might read, and the fool and way-farer could not err therein. Do we find such terms in the Act of 1804 ? On the contrary, in the last clause of that Act, have not the Legislature declared in words the most unmistakable, that *cousins*—all cousins—maternal as well as paternal, shall be equal and equally near to the intestate ? By what right or authority does any one dare to interpolate *paternal* into that paragraph ? And yet, it must be done to make and maintain the case of the defendants in error. I am unable to discuss this point—it requires no discussion—it admits of none. And if thus palpable, under the old law, how much more so under the subsequent legislation giving to the widow the whole estate, both real and personal, of her deceased husband, dying intestate and without issue, (*Cobb's Dig.* 275) ; repealing that portion of the Act of 1804, prohibiting the mother from inheriting from the last child, (*Cobb's Dig.* 296) ; and also that provision of the Act of 1804, excluding her from inheriting from a child, after having intermarried, unless it shall be the last or only child. (*Cobb's Dig.* 296–7.)

Redd *et al. vs.* Clopton *et al.*

How true it is, that extremes in society and civilization, as in every thing else, so often meet. England and the Continental Nations of Europe manifested their preference of males to females. *And the Red men of this country still adhere to this practice.* Our forefathers, following the example of either one or the other, (as is not unfrequent for individuals to do among us, in the distribution of their property, even to this day,) exhibited this preference, in some respects, in the Act of 1804. Never to the extent nor in the particular instance claimed in this decision. The Acts of 1826, 1841 and 1843, to which I have referred, show a more correct, just and enlightened policy. It is, after all, exceedingly difficult to throw aside the impressions of education and habit, in favor of long established ideas. So natural and so powerful are these, that time alone can eradicate them, and cause us to realize, that a cousin on the mother's side, is and of right ought to be, equally near as a cousin on the father's side !

Col. Jones suggests, that the Act of 1804 is carefully framed, so as to prevent the next of kin of the wife from inheriting, under any circumstances, more than a moiety of the husband's property. Hence, if he died childless, she took only one half of his estate, and the other half went to his next of kin. Hence, also, she could not inherit from her last child, with whom she had previously divided the estate. And this is true. It is equally true and apparent, however, that even under that Act, to say nothing of its subsequent modification, it was contemplated that one half should ultimately go through the wife to her relatives. Now, Martin J. Kendrick having survived both father and mother, is it not clear, that to postpone his maternal cousins, would be to carry the whole estate of his father over to his kindred, and thus contravene the manifest intent of the Act of 1804 ? In other words, the design, even of that Act, can only be effectuated by a distribution among *all* the cousins ?