## SHARMAN *vs.* JACKSON.

1. Elizabeth Tankersly, by a deed of gift, gave to her son, William F. Jackson, certain negroes, at the death of the said William F. to be equally divided among the heirs of the body of the said William F. Matilda, a daughter of the life-tenant, married one Sharman and died, leaving children and her husband surviving her in the life of her father. *Held*, 1st. That the words heirs of the body did not create an estate tail in the life-tenant. 2d. That the person who should answer that description at the death of William F. Jackson, took the estate as purchasers and not by descent; that their interest during the life-estate was contingent and not vested. 3d. That in the distribution, the children of Matilda take *per stirpes*, and not *per capita*.

Trover, in Upson Superior Court. Decision by Judge CABANISS, November, 1859.

This was an action of trover brought by Thomas S. Sharman, as administrator of Matilda C. Sharman, deceased, against Winfield S. Jackson, for the recovery of certain negroes contained in the following deed of gift, and upon which plaintiff alone relied in support of his title, viz:

"GEORGIA—MONROE COUNTY:

"Know all men by these presents, that I, Elizabeth Tankersly of said county, in consideration of natural love and affection, which I have for, and bear for my son, William F. Jackson, have this day given to him the following negroes: Patience, Charles, Bill and Winney, during his life, and at his death I give Patience to my grandchildren, Eliza Jane Jackson and Maria Louisa Jackson; and Charles, Bill and Winney, at the death of said William F., to be equally divided among the heirs of the body of said William F., reserving to myself the possession and use of said negroes during my life, without paying any hire therefor.

(Signed)        "ELIZABETH TANKERSLY, L. S.

"Signed, sealed and acknowledged this 17th day of June, 1825.

"In the presence of W. JOHNSON, W. B. CLARK, J. P.

"Recorded 20th June, 1825."

After reading the deed, plaintiff proved that Matilda C. Sharman, deceased, was his wife, and that she departed this

life in the year 1844, and that William F. Jackson died in 1855, and that said Matilda C. was his daughter, and that she was in life at the date of the foregoing deed.   Upon this testimony plaintiff rested his case, and defendant moved for a non-suit on the ground that said deed vested no title in remainder in said Matilda C. Sharman, she not being in life at the time William F. Jackson died.

The Court granted the motion, and ordered a non-suit, and counsel for plaintiff excepts.

JAS. M. SMITH & P. W. ALEXANDER, for plaintiff in error.

GIBSON, GREEN & PEEPLES, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

Three points arise in the construction of this deed.   1st. Whether by its terms an estate tail is created.   2d.  Is the remainder a vested or contingent one?   3d.  Who will take under the limitation to the heirs of the body?

1. As to the first, we consider it well established, that although these words, " heirs of the body," do, *prima facie* import an estate tail, yet in the language of Lord Hardwick, *Hodgson vs. Russey*, 2 *Atk.*, 89, " the general run of cases makes this plain, that notwithstanding they sound like words of limitation, yet upon circumstances and the intention of the parties, they may be construed words of purchase, and descriptive of the person who is to take."   See, also, *Archers' case*, 1 *Co.*, *Kemp vs. Daniel*, 8 *Ga.*, 385.   The superadded words, " at his decease to be equally divided," exclude the idea of a perpetuity, and take from the words that technical signification that the law ordinarily attaches, and gives to them their natural sense; hence we hold that they were used here as words of purchase, and not of limitation, and that they do not create an estate tail.

2. The limitation over then being good, is the remainder contingent or vested?   It was insisted on by counsel for plaintiff in error, who is also plaintiff in the Court below, that the words " heirs of the body," must be considered as synonymous with children, and hence that Matilda Sharman, who was a child of the tenant for life, in life at the date of the deed, took a vested remainder, and which on her death

before the determination of the life-estate was transmissible to her legal representative.    But do these words when construed to be words of purchase, necessarily mean children? We admit that they may be used as synonymous with children, but we know no rule of construction which says they must be so taken; and we apprehend that an examination of the cases will show that whenever they have been so interpreted, it has been in consequence of the supposed intention as collected from explanatory words contained in the deed or will before the Court.    They have been construed to mean next of kin: 1 *Rich. Eq.*, 145, *per Dunkin, Ch.*    They have beeen used in the various senses of children or the persons who should answer the description of heirs at the time of his death, or in the technical sense, as *nomen collectivum*, to signify the whole line of succession.    *Harper Ch. in Rice's Eq.*, 37.    We have seen that they are not here used in the last sense.    There is nothing in the context to show an intention to use them in the sense of children, and there can be no good reason why they do not import in this case such persons as answer that description at the death of first taker, considered in their natural sense, and not technical sense, as the grantor evidently intended by their use, whether such persons should be children, grand-children, or great-grand-children.

No words of explanation are to be found in the instrument, and we consider that they create a contingent remainder to a class of persons who at the death of the tenant for life would answer the description of heirs of the body. Wherever the remainder is limited to a person not in *esse*, or not ascertained, then the remainder is contingent.    *Fearne*, 217.    As if a lease be made to one for life-remainder to the right heirs of *J. S. Boraston's Case*, 3 *Co.*, 20 *a*.    In *Else vs. Osborne*, 1 *P. Wms*, 38, after a settlement for life on the grantor, with remainder to trustee during his life, etc., there was a remainder to the heirs of his body.    Lord Chancellor Cowper decided it to be plainly a contingent remainder, being limited to the heirs of the body of A., who can have no heir during his life, for *nemo est hœres viventis*.    *Bailey vs. Morris*, 4 *Ves.*, 798, was a case in which there was a limitation by deed after life-estate to husband and wife to the heir male of her body by him, to be begotten, and for want of such heir remainder over.    A son was born of the marriage, who died during the life of the wife, and through whom the plaintiff

claimed. *Held,* that this was a contingent remainder in such person as should be heir male at the death of the wife; the Court saying, "This is the case of a deed, therefore, I am of opinion that the limitation subsequent to the estate for life of E. H. was a contingent remainder to such person as would be heir male of her body at her death, in fee, and as *nemo est hæres viventis,* and Thomas H. (the son,) died in the life of the mother, that remainder never took place." This reasoning and decision was afterwards adopted by Lord Cottenham, *Chancellor, in Chambers vs. Taylor,* 2 *Mylne and Cr.,* 376. That is almost a parallel case. The son having died in the life-time of the mother, the tenant for life, no estate ever vested in him, and here Matilda Sharman having died during the life of the tenant for life (her father,) no interest ever vested in her. The only interest which Matilda Sharman took by this deed was a bare possibility. Being presumptive heir at the time of its date, she had a mere hope of succession, which is not devisable, 3, *T. R.,* 93, and consequently not transmissible to her representatives.

Wherever the limitation is contingent by reason that the person or persons to whom it is directed cannot be ascertained, as in the case of a limitation to the right heirs of J. S. (then living,) no interest will vest in the heir during the life of J. S., nor will it be transmissible or descendible from any one dying before it becomes vested. *Fearne* 371, *Doe vs. Tomlinson,* 2 *M. & S.,* 170.

Indeed, these words, heirs of the body, in themselves, import a contingent remainder, for admitting that the person who will be heir is in being, still it is uncertain whether the person who would be heir should the ancestor die at a particular time, may not die before the ancestor, and hence the person who will eventually be heir, is one, who even if he is in being, cannot be ascertained until the death of the ancestor. And hence, it is a general rule that a remainder limited to the heir or heirs of a living person, is a contingent remainder. To this there are certain exceptions, as where there are explanatory expressions showing that they were used in some other sense, as sons, or children, as denoting the persons who at the time are the apparent heirs. Another exception is, when, by the celebrated rule in Shelly's case, the words are to be considered as words of limitation. 2 *Fearne,* 202. In this instrument, however, there are no explanatory words showing

Sharman *vs.* Jackson.

an intention that they are used as synonymous with children, or sons, or daughters, or that they are intended to designate any particular person, who at its date were the heirs presumptive of the tenant for life, and having already determined that by reason of the superadded words, the term heirs of the body are taken out of the application of the rule in Shelly's case, they must *ex vi termini,* constitute a contingent remainder by virtue of the maxim, *nemo est hœres viventis.*

By this construction we violate no intention of the donor, as collected from the instrument. The children of Jackson living at the date of the deed, and who were then his apparent heirs, were not the immediate objects of her bounty. This is manifest from the creation of a prior life-estate. She, no doubt, intended to give the benefit of this disposition first to her son for life, and then to those who, at his death, would stand towards him in the relation of his heirs. It would be a most forced construction to say that after the death of her son, the tenant for life, she intended the property to pass away from his family and go to strangers. But this would be the result were we to hold that the words heirs of the body, are here synonymous with children, and that they took vested remainders transmissible to their legal representatives. This presumption of intention has no bearing on the decision we give. Her intention is to be looked for in the deed itself, and there is nothing there inconsistent with the construction we put upon it. "At his death to be equally divided among the heirs of his body," we construe to mean a remainder to those who at that time would answer to the description of heirs of the body ; that is, the lineal descendants upon whom the law would cast the descent of lands if the ancestor had died intestate. *Lemacks vs. Glover,* 1 *Rich. Eq.,* 141. And it is undoubtedly competent that an interest may be limited to such persons as shall at a particular time sustain a particular character. *Halloway vs. Halloway,* 5 *Ves.,* 401.

Where property is given to a class of persons, and not by name, it will take in all who shall answer the description at the time the gift shall take effect, and if there be but one, though it be expressed in the plural number, that one will take. *Swinton vs. Legare,* 2 *McCord's Ch. R.,* 445; *Myers vs. Myers,* 2 *ib.,* 257, 259.

It is clearly established by *De Visme vs. Mele,* 1 *Bro. Ch. Cas.,* 537, any many other cases, that when the testator gives

any legacy or benefit to any person not as *persona designata,* but under a qualification and description at any particular time, the person answering the description at that time is to claim. *Godfrey vs. Davis,* 6 *Ves.,* 43.

It follows, therefore, that as the husband or representative of Matilda Sharman at the death of Jackson, the life tenant does not answer the description of persons to whom the gift is made; that he cannot take, but that her children, who do answer to that description, and who are also within the intention of the donor, take instead. And so the judgment of non-suit was properly awarded by the Court below.

3. It having been ascertained who are to take under the description, it remains to be determined, how the distribution is to be made under the direction "to be equally divided." We hold that they are to take *per stirpes* and not *per capita;* and this opinion is founded on the intention of the donor, as gathered from the words of the instrument, construed in reference to, and in connection with, the Statute of Distribution of this State, by which the grantor evidently contemplated that the property should be distributed among these persons.

Elizabeth Tankersly in making this deed, never could have meant that one, of a half dozen grand-children, should take equally under the deed with one of the children of her son, the life tenant, who was in life at the making of the instrument, and directly within the scope of her immediate intended bounty. It is true, she says equally divided, but that is to be understood and construed as that equal division made by the distribution laws, that is, that all the heirs related to the first taker equally, or in the same degree should take equally, while those who were in the same line, but further removed, should take by representation, that is, all together standing in the place of the deceased parent, and taking but the share or proportion which is equal with the shares of the children. This is an equal division among the heirs of Wm. F. Jackson, and it is not the less so that one or more of the shares must again be sub-divided into as many parts as there are grand-children distributees.

Matilda Sharman was in life at the execution. She was in the eye of the donor at that time, as one who would take an equal share with the other children at the death of her father, should she at that time be in life; but she was not, and as her children, equally with herself, answer the descrip-

tion, one degree farther removed, they fall in, filling up the gap caused by her death, and take only that distributive part of the estate which would have come to her had she lived, just as the law would have distributed the property to them had William F. Jackson absolutely possessed the property in his own right and died intestate. *Buskin's Appeal*, 3 *Penn. R.*, 304, was a case very much like this. The testator, after making certain bequests, directed thus: " Then my will is, that the remaining part of my goods, stocks, etc., shall be impartially appraised, and after such appraisement made, that the same *shall be equally divided between all the heirs."* The Court held that, "by these expressions, the testator means his own heirs, which can only be ascertained by resorting to the Statute of Distribution, as has often been done in analogous cases; and taking this to be the rule, it descends to the children and grand-children *per stirpes.* This shows the persons who are to take, and the same rule must be applied to the quantum of the estate."

In England the rule would be different, but the reason of the rule cannot be the same here as there, on account of the difference in the law of descents. In *Lemack vs. Glover, Reported in Rich. Eq.*, 141, this question was well considered by Chancellor Harper. The testator in that case bequeathed the use of personal property to his sister Jane, and after her death bequeathed the same to the heirs of her body, to them and their heirs and assigns forever." The Court held, first, that the words, " heirs of the body," were words of purchase. Second, that all who answered the description of the heirs of the body at the death of Jane, were entitled; but the Court dividing equally as to whether such persons took *per capita* or *per stirpes*, there was no decision of that question, Chancellor Harper holding that they took *per stirpes;* Chancellor Johnson and Justices O'Neal, Evans, Wardlaw, concurring; while Chancellor Johnston, Dunkin and Justice's Richardson, Butler, and Frost, held to the contrary. We think the opinion in favor of the *per stirpes* distribution is the better one. The other is put on the ground that the rule was settled in the previous adjudication of *Campbell vs. Wiggins, Rice Eq.*, 10, and not upon reason or law, and with the candid confession that such rule, when applied to the circumstances of that case and considered in connection with the proportion in which the distribution is to be made, the Court

Sharman *vs.* Jackson.

is constrained to doubt whether the intention of the testator is not sacrificed, (perhaps necessarily sacrificed,) in deference to an established rule.   The opinion of Chancellor Harper, on the other hand, from its strength, clearness and ability, and in accordance with the manifest intention of the testator in that case, and the donor in this, is entitled to great respect, and attention, at least in considering the question, if it does not, in fact, amount to a judicial precedent.   He says, "I would not depart from the English cases when they apply, but I think our Statute of Descents and Distributions, making the distributees of personal estate identical with the heirs of land, (as in our own statutes,) makes a new case, and admits and requires a different construction.   In England, the heir at law is in general a single individual, and the plural 'heirs of the body' serves to denote the succession.   When these words, therefore, are held to denote a class or classes of persons, it may be said that there is nothing on which to found the notion of representation, or that the parties are to take otherwise than *per capita.*   With us, certainly, it must be competent for a testator to give his own or mother's lineal descendants in such shares and proportions as they would have taken land by descent in case of intestacy.   And when he describes them as heirs of the body, nothing can more plainly express their intention.   They are to take as heirs in every respect that they can so take, only it is by purchase instead of descent.   In England, when taken to mean a class of persons, these cannot in any respect take as heirs, or heirs of the body.   Whether construed, children, issue, descendants, next of kin, etc., they must always be different persons from the heirs.   It is said in cases of coparcenary or gavel-kind, that all the individuals who take, make up but one heir.   But with us, the heir is made up of component parts in different proportions.   In the present case, I think he consists of two individuals, each entitled to one-fifth of the estate, of six persons, each entitled to one-third of one-fifth, or one-fifteenth, and of two persons each entitled to one-tenth.   So they would have taken any land of which their mother had died intestate.   And this agrees with what the law supposes to be the rule of affection by which children are preferred to grandchildren, and nearer kindred to the more remote."