SARAH HOUSTON *et al.*, plaintiffs in error, *vs.* WILLIAM DA-VIDSON *et al.*, defendants in error.

1. Under the Act of 1816, illegitimate brothers and sisters, born of the same mother and their representatives inherit from each other in the same manner as if born in lawful wedlock, and if, at the death of an intestate, the brothers and sisters be all dead, their children take *per capita*, and not *per stirpes*, just as do legitimates under the same circumstances.

2. The Act of 1859, and the Code, section 2448, providing that representation among collaterals shall extend to the children and grand-children of brothers and sisters, extends also to distribution among the brothers and sisters of illegitimates and their representatives, but if all the brothers and sisters be dead, leaving children, and one of the nephews be also dead, leaving children, the division is still *per capita* among the nephews and nieces, the children of the deceased nephew or neice taking among themselves the share that would have fallen, under the *per capita* division, to their deceased parent.

Equity. Illegitimates. Rules of inheritance. Tried before Judge SCHLEY. Chatham Superior Court. May Term, 1871.

This was a bill in equity, filed by William Davidson and Rose Brice, formerly Davidson, against William J. Campbell, as administrator upon the estate of Susan Jackson, deceased, and the distributees of said estate. The bill set forth that, about the commencement of this century, a woman named Dolly, a free person of color, became the mother successively of the following named children, to-wit: Susan Jackson, Hettie Houston, Elizabeth Houston, Richard Houston, Robert Houston, and Mary Houston; that said Susan

Jackson, a free person of color, acquired considerable personal and real estate, and, without ever having a child, died in 1862, intestate; that Hettie Houston died in the lifetime of intestate, leaving two children, to-wit: Hettie Hanscomb and Priscilla A. Mirault, who are now living; that Mary Houston died during the lifetime of intestate, had two children, who are complainants; that Elizabeth Houston died during the lifetime of intestate, leaving two children, to-wit: Isabella Gordon, who died without issue in the lifetime of intestate, and Dolly Ann Drummond, now living; Richard Houston left surviving him two children, to-wit: Sarah Houston and Richard Ann Butler, who has died since the death of the intestate, and without issue; that Robert Houston died in the lifetime of intestate, leaving the following children surviving him, to-wit: Sarah H. Houston, Richard Houston, Robert Houston, Elizabeth Campbell, now the wife of S. F. Campbell, Ann E. Jackson and James Houston, who has died since the death of intestate and without issue, and William Houston, who has also died since the death of intestate, and without issue, and William Houston, who died previous to the death of the intestate, leaving one child, to-wit: Georgia Benton, now the wife of Henry Benton; that upon the death of the said Susan Jackson, the said Richard Ann Butler, Hettie Hanscomb, and Priscilla A. Mirault went into possession of the property of the estate and used the same until the death of the said Richard Ann Butler, in 1860; that after her death said Hettie Hanscomb and Priscilla A. Mirault received the rents and profits of said property until administration upon said estate. That on the ... day of ......, 1860, letters of administration were granted to William J. Campbell, who sold the real estate for the sum of $10,000, which said sum, less the expenses of administration, is now in the administrator's hands, to be distributed as the Court may direct. The bill prayed that said fund, and any other property belonging to said estate, might be distributed *per stirpes* among the brothers and sisters of intestate and their

representatives. The jury found the facts to be substantially as state1 in the bill; also, the various amounts that had been received by the several distributees. They further found as follows: "We are unable to find how the said estate shall be divided amongst the said distributees, whether they shall take equally *per capita*, or unequally *per stirpes*, but leave that matter to the Chancellor, and find said distribution as he shall decide." Upon this special verdict, the Chancellor decreed that the distribution should be *per stirpes*, and plaintiffs in error excepted.

1st. Because the Court erred in decreeing that the estate of the intestate should be distributed *per stirpes*, as the brothers and sisters of the intestate all died in her lifetime, and her nieces and nephews stood to the intestate in equal degree, and should take equal shares, *per capita*, and not unequal shares, *per stirpes*.

2d. Because the Court erred in decreeing that Georgia Benton, the child of William Houston and grand-niece of the intestate, took an equal share with the uncles and aunts, children of Robert Houston, as among bastards there is no representation among collaterals further than children of brother and sister.

J. J. POPE, represented by JULIAN HARTRIDGE, for plaintiffs in error.

J. R. SAUSSY, for defendants.

McCAY, Judge.

The progress of civilization and the spread of correct ideas has now almost obliterated the old notion that illegitimates are outcasts. They do not inherit from the father, because the marriage tie—the proof that they are his children—does not exist between him and the mother. But no such proof being needed, as to their connection by blood with the mother, or with the brothers and sisters of her womb, they inherit.

It is in Georgia, now, only a question of *legal* proof of blood connection, since now legitimates and illegitimates inherit equally from the mother, and a legitimate brother or sister may, in some cases, inherit from an illegitimate: Code, 1791, 1792. So the marriage of the parents legitimates the children born before: Code, 1788. The whole spirit of our law is to put them on the same footing of legitimates, as to their mother and to the children of her womb.

We hold, therefore, that the Act of 1859, extending the principle of representation among collaterals to the grandchildren of brothers and sisters, extends to the case where the estate for distribution is the estate of an illegitimate. The language of the Act is broad enough to cover the case. The Act of 1816 had provided that collaterals should take among themselves, as though the deceased were born in lawful wedlock. And why not? There may be good reason why there should be trouble as to how a bastard should inherit, but why inheritance *from* him should differ from inheritance from a legitimate, we do not see. The Act of 1816 and the Act of 1859, taken together, we think, extends the principle of representation to the grand-children of the brother of a bastard, in all cases happening while that Act is of force. The same principle is carried into the Code, and we see no reason to keep up a distinction which is not founded in common sense, or common charity, unless compelled to do so by express law.

Our Statute of Distributions before the Code, as to distribution among collaterals, is almost the words of the English Statute : 2 Blackstone, [515.] By the settled rule for the construction of that Act, if the brothers and sisters be all dead at the death of the intestate, the *next* of kin take *per capita.* The doctrine of representation only comes in when a portion only of the brothers or sisters have died, leaving children : See 2 Black. [517,] and this is a very reasonable and proper construction. So, by our law, up to 1859, representation among collaterals did not extend further than

to the children of brothers and sisters, and had the intestate died before 1859, the distribution would have been *per capita* among the living nephews and nieces alone, since there were no uncles or aunts. After 1859, the Statute of Distributions stood altered so as that the child or children of the intestates' nephews and neices are entitled. The Code expresses the same idea, section 2448, by declaring that " the children or grand-children of brothers and sisters shall represent and stand in the place of their deceased parents." The only question there can be as to these changes in the general law on the subject of representation among collaterals, is, whether it was the intention of the Legislature to keep up the English rule, that when the collaterals do not all stand in equal degree, the distribution is *per stirpes* and not *per capita.* Without doubt, it is the rule, that if any of the brothers or sisters be living, and there be children living of deceased brothers or sisters, then, as those entitled do not stand in equal degree, the distribution is *per stirpes.* But if the brothers and sisters be *all* dead, then, by the English rule, as representation stops, and those who take it all must take in equal degree, the distribution is always *per capita.* Our Act of 1859 extends the principle of representation to grand-children of brothers and sisters, and by applying the English principle, if those who are entitled, not standing in equal degree, the distribution is to be *per stirpes.* So that in this case, the Court below has made the distribution *per stirpes ;* that is, he has divided the whole into as many parts as there were brothers and sisters living, and given to each set of nephews a share. Then divided that share among the nephews, giving to the children of a nephew, when that nephew is dead, their father's or mother's share. In other words, the Court has declared that, as it has so happened, that there are *grand-children* of a brother, the old rule, which made the division *per capita,* when all the brothers and sisters were dead, is changed, and the division is *per stirpes,* even among the nephews.

Houston *et al. vs.* Davidson *et al.*

We do not think this was the intent of our Act of 1859, nor of the Code. The words of the Act of 1859 simply amend the Act of 1804, "so far as it restricts the distribution of intestates' estates among collaterals to the child or children of intestate's brothers and sisters, by providing that it, to-wit: the distribution, shall "extend to and embrace the child or children of intestate's nephews and nieces." We do not think, therefore, it was intended to change the *manner* in which the nephews and nieces were to take, but *only* to provide that the grand-children of a brother or sister should take their father's share; that they should be let in, even though all of the class next above them in the scale should not be dead.

We think, therefore, the true rule under the Act of 1859 and of the Code, is, that the grand-child of a brother or sister shall simply stand in his father's place; that the estate shall be distributed as though his father were living, and he shall represent him. If the nephews and nieces be all dead, then the distribution is *per capita*, no matter who takes. But if any of *them* be living, it is distributed, as though they were all living, the children of each one deceased standing in place of the parent. In other words, as by the rule, if the brothers and sisters be all living the distribution is *per capita*, so if nobody but nephews and nieces take, it is *per capita*. But, if one brother be alive, and *must have his full share*, the distribution is therefore *per stirpes*. So if all the brothers and sisters be dead, any nephew or niece *must have his full share*. This can only be done by dividing it *per capita*, as to nephews and nieces, if there be any of that class living, and admitting the children of any deceased nephew or niece to the parent's place. The object of the rule is that those *nearest* of kin shall always get just the share they would have got if all of equal degree with them were living. This can only be done in a case where all the brothers and sisters be dead, by distributing, *per capita*, to the nephews and nieces, as though they were all alive, and allowing their children, if any nephew or niece be dead, to stand in the place of the

parent. The *nearest* in blood thus get the largest portion, and equal portions, and those who come in by representation take the place of their parent. The rule adopted by the Court below gives those nearest and equal in blood *unequal shares*.

It is, therefore, our opinion that the principles of the common law and the intent of our Legislature, in making the change, will be best carried out by holding, that if all the brothers and sisters be dead at the death of the intestate, then the distribution is between the nephews and nieces, *per capita*, and if any of them be dead, leaving children, distribution is to be made as though the nephews and nieces *were all alive*, the children of the deceased nephew or niece standing in place of the parent.

Judgment reversed.