WILLIAMS *et al. v.* TRUST COMPANY OF GEORGIA, trustee, *et al.*

No. 12214.   FEBRUARY 19, 1938.   REHEARING DENIED MARCH 17, 1938.

*Orville A. Park* and *Orville A. Park Jr.,* for plaintiffs in error.

*Crenshaw, Hansell & Gunby, Howell & Post, N. F. Culpepper, John R. Strother,* and *Haas, Gambrell & Gardner,* contra.

GRICE, Justice.   On April 5, 1932, William H. Williams, a resident of Georgia, died testate.   The residuum of his estate was by the will devised in trust for certain charitable uses, but the residuary trust was declared null and void, and the executor was directed to administer said trust as in case of intestacy; that is, to distribute said residuary estate to the heirs at law of the testator in accordance with the rules of inheritance and descent prevailing in Georgia.   He left no wife, no child or descendant of child, no father, no mother.   He had nine brothers and sisters, all of whom had died before his death.   Four of the brothers and sisters left no lineal descendants.   The other five left children.   The executor

brought a petition for direction, the only question being whether the nieces and nephews take per capita or per stirpes.

The law to be applied is that prevailing at the time of the death of William H. Williams, which was anterior to the date of the adoption of the Code of 1933. The provision appearing in the latter part of subsection 5 of section 113-903 of that Code, which in express terms declares that "If all the brothers and sisters be dead at the death of the intestate, then the distribution is between the nephews and nieces per capita," etc., is not to be found in any previous Code. Instead, beginning with the Code of 1863, each one of them contained all of what is now contained in subsection 5 of section 113-903, except the last sixty-five words. This statement, however, is to be qualified by the fact that in 1931 the General Assembly of Georgia placed upon an equal footing, as to the right of inheritance, the half-blood both on the paternal and maternal side; the entire subsection 5 in the prior Codes reading as follows: "Brothers and sisters of the intestate stand in the second degree, and inherit, if there is no widow, or child, or representative of child. The half-blood on the paternal side inherit equally with the whole-blood. If there be no brother or sister of the whole or half-blood on the paternal side, then those of the half-blood on the maternal side shall inherit. The children or grandchildren of brothers and sisters deceased shall represent and stand in the place of their deceased parents, but there shall be no representation further than this among collaterals."

The uncertainty, if there be uncertainty, as to the true rule of distribution to be followed in the instant case arises by reason of the clause, in the section referred to, "The children or grandchildren of brothers and sisters deceased shall represent and stand in the place of their parents." The act approved December 12, 1804, which was an act to amend our statute of distribution, declared that "no representation shall be admitted among collaterals further than the child or children of the intestate's brothers and sisters." By an act approved December 14, 1859, the General Assembly altered that provision so as to embrace the child or children of intestate's nephews and nieces. Of the act of 1804, Judge Lumpkin, in *Redd* v. *Clopton*, 17 *Ga.* 232, said: "This act of distribution, it will be perceived, is almost a literal transcript of the English statute of 22 and 23 Charles II, which was borrowed from

the 118th Novel of Justinian." Sections VI and VII of the statute of 22 and 23 Charles II is in this language: "VI. And in case there be no children nor any legal representatives of them, then one moiety of the said estate to be alloted to the wife of the intestate, the residue of the said estate to be distributed equally to every of the next of kindred of the intestate who are in equal degree and those who legally represent them. VII. Provided there be no representations admitted among collaterals after brothers' and sisters' children: (2) And in case there be no wife, then all the said estate to be distributed equally to and amongst the children; (3) and in case there be no child, then to the next of kindred in equal degree of or unto the intestate, and their legal representatives as aforesaid, and in no other manner whatsoever." 8 English Statutes at Large, 349. It will be noted that neither in our act of 1804 nor in the statute of 22 and 23 Charles II is there an express statement that nephews and nieces take by representation. The most that can be said is that both statutes provide for representation among brothers' and sisters' children. At the time of the passage of our act of 1804, "almost a literal transcript," to use Judge Lumpkin's words, of the English statute, and containing a provision similar to that in the English statute so far as concerned representation among nieces and nephews, it was well settled that the construction in England of the statute of distribution was that where all the distributees stand in equal degree, they take per capita, and that they did not take by representation except when the claimants stand in unequal degree; it being only in the latter case that children of a deceased brother, for instance, stand in the place of and represent their deceased father.

The statute of 22 and 23 Charles II, chapter 10, providing for the distribution of the personal estate of intestates so far as the distribution among collaterals is concerned, as construed by the English courts, is thus stated by Blackstone: "They are divided per capita, to every man an equal share, when all the claimants claim in their own rights, as in equal degree of kindred, and no jure repræsentationis, in the right of another person. As, if the next of kin be the intestate's three brothers, A, B, and C; here his effects are divided into three equal portions, and distributed per capita, one to each; but if one of these brothers, A, had been dead, leaving three children, and another, B, leaving two, then the dis-

tribution must have been per stirpes; viz., one third to A's three children, another third to B's two children; and the remaining third to C, the surviving brother; yet, if C had also been dead, without issue, then A's and B's five children, being all in equal degree to the intestate, would take in their own rights per capita; viz: each of them one fifth part." 2 Browne's Blackstone's Commentaries, chapter 32, page 407. It is also the general rule in the United States that when all the heirs of an intestate are in equal degree of consanguinity to the decedent, they take per capita. 18 C. J. 824, § 30, and the numerous authorities cited.

In *Odam* v. *Caruthers, 6 Ga.* 39, it was held that a man dying intestate, leaving a wife and no children, but leaving grandchildren whose father died before the intestate died, the grandchildren take per stirpes, and not per capita. This conclusion was reached because the wife under our own statute occupies the same degree with the children. "She being in life, she and the grandchildren stand in unequal degrees, and consequently, by the rule, the grandchildren must take by representation," said the court. Speaking for the court, Judge Nisbet stated: "The construction in England of the statute of distribution is that where all the distributees stand in *equal degree,* as, for example, three brothers, three grandchildren, three nephews, etc., they take per capita, or each an equal share. But if the claimants stand in *unequal degrees,* as for example, a child and three grandchildren, they take per stirpes, representation being necessary to prevent the exclusion of those in a remoter degree, and to fulfil the equity of the statute, which contemplates an equal distribution. Walsh *v.* Walsh, Prec. in Ch. 54. Davers *v.* Dews, 3 P. Williams, 50. Stent *v.* McLeod, 2 McCord, Ch. R. 354. Hallet *v.* Hare, 5 Paige, 316. 2 Kent Comm. 425. We adopt this rule of construction, and apply it to our own statute." In *Sharman* v. *Jackson, 30 Ga.* 224, 229, the court held that a certain distribution should be made per stirpes, and not per capita; but Judge Lyon, in delivering the opinion, evidently had in mind the distinction pointed out above by Judge Blackstone and by Judge Nisbet, for he used this argument: "It is true, she says equally divided, but that is to be understood and construed as that equal division made by the distribution laws, that is, that all the heirs related to the first taker equally or in the same degree should take equally, while those who were in the same

line, but further removed, should take by representation, that is, all together standing in the place of the deceased parent, and taking but the share or proportion which is equal with the shares of the children." In *Maclean* v. *Williams,* 116 *Ga.* 257 (52 S. E. 485, 59 L. R. A. 125), this court held that the distribution there dealt with should be per stirpes and not per capita; but Mr. Justice Cobb, who wrote the opinion, recognized that the presence in what is now subsection 5 of Code § 113-903, of the clause, "The children or grandchildren of brothers and sisters deceased shall represent and stand in the place of their deceased parents," did not mean that in all cases the nieces and nephews take per stirpes; for, expressly planting himself on what was announced in *Odam* v. *Caruthers,* supra, he observed: "If all the heirs at law stand in the same relation to the decedent, they take equally per capita. If some stand in different degrees from others, they take per stirpes, but they take equally nevertheless." In *Rogers* v. *Smith,* 145 *Ga.* 234 (88 S. E. 963), the question was whether the remainder devised to the heirs of the testator's brothers should be distributed per capita or per stirpes. Mr. Justice Hill, who delivered the opinion, also seems to have had in mind the distinction hereinbefore described; for he said: "Here all the persons are in the same channel of descent; are in the same relation or degree to the testator, and, respectively, to his brothers. It is a question of distribution among living persons, all of whom were living when the will was made, all of whom were living when the testator died, and all of whose ancestors in the line of the testator were dead; and it is not a question of some one coming in to take the place of some one who was primarily to take, and whether those who thus came in by representation would come in on equal terms, or take the place of those under whom they claimed."

In *Dawson* v. *Shave,* 162 *Ga.* 126 (132 S. E. 912), the point for decision was as to who was entitled to administer the estate of a man who died intestate leaving no wife or relatives except one sister and the children and grandchildren of four deceased sisters and one deceased brother. The court held that the person selected in writing by the sister should be preferred to the person selected in writing by a majority of the children of the intestate's deceased sister and brother, although those constituted a majority both numerically and in point of interest. In the opinion Chief Justice

Russell observed: "The proximity of relationship to an intestate in a degree has been frequently referred to in the distribution of estates. In *Ector* v. *Grant,* 112 *Ga.* 557 (37 S. E. 984, 53 L. R. A. 723), a first cousin on the maternal side, though only of half blood, was held to take the estate in preference to a second cousin of the whole blood. In *Houston* v. *Davidson,* 45 *Ga.* 574, the question was also fully discussed by Judge McCay, and it was held: 'that if all the brothers and sisters be dead at the death of the intestate, then the distribution is between the nephews and nieces, per capita, and if any of them be dead, leaving children, distribution is to be made as though the nephews and nieces *were all alive,* the children of the deceased nephew or niece standing in place of the parent'." In *Baker* v. *Citizens & Southern National Bank,* 175 *Ga.* 161 (165 S. E. 21), the question involved was the construction of a will; and it was decided that under the language used there should be an equal division of the property among the testator's children who were alive at the termination of the life-estate; and the children of any child who might have died during the existence of the life-estate. The opinion of the Chief Justice contains the excerpt from *Sharman* v. *Jackson,* 30 *Ga.* 227, where Judge Lyon recognized the rule "that all the heirs related to the first taker equally or in the same degree should take equally, while those who were in the same line, but further removed, should take by representation." Two Georgia commentators on the statute of distributions, as given in the Code, have cited *Odam* v. *Caruthers* and *Houston* v. *Davidson,* supra, as stating the correct rule. Judge William M. Reese says: "The difference between descent per stirpes and per capita is explained in 6 Georgia, 42." He then quotes a large part of the opinion in *Odam* v. *Caruthers,* and then continues: "Upon the clause in paragraph 5 of section 2484, which provides that children and grandchildren of brothers of deceased shall represent and stand in place of their deceased parents, but that there shall be no representation farther than this among collaterals, the Supreme Court, in 45 *Ga.* 574, held as follows:" He then quotes the headnotes in *Houston* v. *Davidson.* Reese on Executors, Administrators, and Guardians (1880), 138, 140. Redfearn, in his work on Wills and Administration of Estates in Georgia (1923), 643-646, § 313, discusses the subject at some length, quoting from Blackstone to the

effect that "The settled rule for the construction of the English statutes of distribution is that where all the collateral distributees stand in equal degree, they inherit per capita from the intestate; and where they stand in unequal degree, they inherit per stirpes, the more remote degrees taking by representation the share of the deceased ancestor." He then follows with an illustration applying the rule as stated by Blackstone, and concludes his discussion thus: "This rule of construction of the English statutes of distribution is now followed in Georgia, so that if all the collateral relatives are related in the same degree to the intestate, they inherit per capita; but if one or more stand in unequal degree, then all inherit per stirpes." *Odam, Houston,* and *Maclean* cases, supra.

None of the decisions of this court, extracts from which are set forth above, rule the precise question presented by this bill of exceptions; but the expressions from the several opinions are given as indicating the views of the distinguished jurists whose words have been quoted. We do regard, however, the decision in *Houston* v. *Davidson, 45 Ga. 574,* as controlling. One of the assignments of error in that case was: "1st. Because the court erred in decreeing that the estate of the intestate should be distributed per stirpes, as the brothers and sisters of the intestate all died in her lifetime, and her nieces and nephews stood to the intestate in equal degree, and should take equal shares, per capita, and not unequal shares, per stirpes." True the law of illegitimates was involved; but the court decided, first, that "under the act of 1816 illegitimate brothers and sisters born of the same mother, and their representatives, inherit from each other in the same manner as if born in lawful wedlock;" and secondly, that "if, at the death of an intestate, the brothers and sisters be all dead, their children take per capita, and not per stirpes, just as do legitimates under the same circumstances." Both points were necessary to be decided. As a matter of fact, a little less than one page of the opinion deals with the first, and almost three pages with the second proposition. The facts before the court called for the decision that was made. Said the court, speaking through Judge McCay: "Our statute of distributions before the Code, as to distribution among collaterals, is almost the words of the English statute: 2 Blackstone, [515.] By the settled rule for the construction of that act, if the brothers and sisters be all dead at the death of the

intestate, the *next* of kin take per capita. The doctrine of representation only comes in when a portion only of the brothers or sisters have died, leaving children: See 2 Black. [517,] and this is a very reasonable and proper construction. So, by our law, up to 1859, representation among collaterals did not extend further than to the children of brothers and sisters; and had the intestate died before 1859, the distribution would have been per capita among the living nephews and nieces alone, since there were no uncles or aunts. After 1859 the statute of distributions stood altered so as that the child or children of the intestate's nephews and nieces are entitled. The Code expresses the same idea, section 2448, by declaring that 'the children or grandchildren of brothers and sisters shall represent and stand in place of their deceased parents.' The only question there can be as to these changes in the general law on the subject of representation among collaterals is, whether it was the intention of the legislature to keep up the English rule, that when the collaterals do not all stand in equal degree the distribution is per stirpes and not per capita. . . If the nephews and nieces be all dead, then the distribution is per capita, no matter who takes. But if any of *them* be living, it is distributed, as though they were all living, the children of each one deceased standing in place of the parent. In other words, as by the rule, if the brothers and sisters be all living the distribution is per capita; so if nobody but nephews and nieces take, it is per capita. But if one brother be alive, and *must have his full share,* the distribution is therefore per stirpes. So if all the brothers and sisters be dead, any nephew or niece *must have his full share.* This can only be done by dividing it per capita, as to nephews and nieces, if there be any of that class living, and admitting the children of any deceased nephew or niece to the parent's place. The object of the rule is that those *nearest* of kin shall always get just the share they would have got if all of equal degree with them were living. This can only be done in a case where all the brothers and sisters be dead, by distributing per capita to the nephews and nieces, as though they were all alive, and allowing their children, if any nephew or niece be dead, to stand in the place of the parent." He concludes the opinion by making it plain that the very point involved in the case at bar was dealt with and decided; for he said: "It is therefore our opinion that the principles of.

the common law and the intent of our legislature in making the change will be best carried out by holding, that if all the brothers and sisters be dead at the death of the intestate, then the distribution is between the nephews and nieces, per capita; and if any of them be dead, leaving children, distribution is to be made as though the nephews and nieces *were all alive,* the children of the deceased nephew or niece standing in place of the parent." *Houston* v. *Davidson* was a full-bench decision, rendered in 1872. If *Harrell* v. *Storey,* 175 *Ga.* 569 (165 S. E. 554), decides to the contrary, it must yield to the older decision.

The judge, to whom the case was submitted on an agreed statement of facts, having decided that the estate should be divided per stirpes and not per capita, the judgment is

*Reversed. All the Justices concur, except Russell, C. J., and Hutcheson, J., who dissent, and Atkinson, P. J., disqualified.*

RUSSELL, Chief Justice, dissenting. William H. Williams, whose will has been a matter of adjudication in this court (*Trust Co.* v. *Williams,* 184 *Ga.* 706, 192 S. E. 913), died without wife or children or descendants of children. His executor, the Trust Company of Georgia, was proceeding to distribute his estate to his collateral heirs, thirteen nieces and nephews, when the question was raised as to whether the distribution should be per capita or per stirpes. These collateral heirs, all in life at the time of Williams' death, were the children of a half brother and four full brothers and sisters. By consent of all parties the court tried the case without a jury, and entered an order distributing the estate per stirpes, with a primary distribution into five parts, representing the respective shares allowable to the half brother and the four full brothers and sisters, and said five shares to go to the respective five groups of children. The six children of Duke Williams, the deceased half brother of the testator, excepted to said order and judgment, and contended that the distributive shares should be per capita, and instead of dividing among themselves the one-fifth allowable to the half brother, the estate should be divided into thirteen equal parts, which would give the six children of Duke Williams, the half-brother, 6/13 of the estate, and to the seven children of the full brothers and sisters altogether only 7/13 of the estate. It is plain that the only question before this court is, did the trial court correctly direct that the distribution should be per stirpes and not per capita?

I am of the opinion that upon the death of Williams in 1930 the rights of the parties immediately became fixed under the Code of 1910, § 3931 (5), as follows: "Brothers and sisters of the intestate stand in the second degree, and inherit, if there is no widow, or child, or representative of child. The half-blood on the paternal side inherit equally with the whole-blood. If there be no brother or sister of the whole or half-blood on the paternal side, then those of the half-blood on the maternal side shall inherit. The children or grandchildren of brothers and sisters deceased shall represent and stand in the place of their deceased parents, but there shall be no representation further than this among collaterals." The right to take property by descent is a creature of the law, and not a natural or unalienable right, and the rights of the parties in this case are governed by the laws of the State of Georgia. Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283. Upon the question as to what law was of force in Georgia in 1930, it was held by this court in *Flint* v. *Foster,* 5 *Ga.* 194 (5): "The laws of Georgia may be thus graduated with regard to their authority: 1. The constitution of the United States. 2. Treaties. 3. Laws of the United States, made in pursuance of the constitution. 4. The constitution of the State. 5. The statutes of the State. 6. Provincial acts that were in force and binding on the 14th day of May, 1776, so far as they are not contrary to the constitution, laws and form of government of the State. 7. The common law of England, and such of the statute laws as were usually in force before the Revolution, with the foregoing limitation." While keeping these things in view, this court unanimously, and after lengthened and very careful consideration of the subject, decided in *Harrell* v. *Storey,* 175 *Ga.* 569, that the lower court erred in rendering judgment distributing the estate among nieces and nephews per capita instead of per stirpes.

The opinion of three members of the court in the instant case is an effort to substitute the opinion of three judges in *Houston* v. *Davidson,* 45 *Ga.* 574, for the decision in the *Harrell* case, supra; and the purpose of this dissent, if it amounts to nothing more, is to protest against a rape of the law, and the effort to force a three-judge decision of a court consisting of six members upon the profession and the public as the true law, while, as I contend, this can not supersede the unanimous opinion of this court in the *Har-*

*rell* case unless they can support the three-judge opinion in *Houston* v. *Davidson* with five Justices from the court as at present constituted. Of course the court can not formally overrule the decision in the *Harrell* case except with the consent of six Justices,—the entire court. Nor can this court bolster up the *Houston* case except with the concurrence of five (not three) Justices of the court as it now sits. "A decision rendered by the Supreme Court prior to the first of January, 1897, and concurred in by three Justices, can not be reversed or materially changed except by the concurrence of at least five Justices. Unanimous decisions rendered after said date by a full bench of six shall not be overruled or materially modified except with the concurrence of six Justices, and then after argument had, in which the decision, by permission of the court, is expressly questioned and reviewed; and after such argument, the court in its decision shall state distinctly whether it affirms, reverses, or changes such decision." Code, § 6-1611. If the concurrence of five Justices is required to give a three-judge case vitality as compared with the other decisions of this court, a fortiori three Justices alone can not make it the law in the face of a six-judge opinion, such as *Harrell* v. *Storey*. For this reason I consider the majority opinion in the case at bar as a mere brutum fulmen, without binding force or effect on anybody, unless effected by force. Mr. Justice HUTCHESON concurs in this dissent.