TAYLOR *et al. vs.* STREET.

It appearing    at the plaintiffs' intestate, under whom they claim, sold the land in dispute to his father, made him a deed thereto and had it recorded, and lived several years afterwards, and after his death his father went into possession and exercised acts of ownership for years and then sold to the defendant, who purchased without notice of any claim of plaintiffs and in good faith, the plaintiffs are, as their intestate would be, estopped from setting up title. Whether the deed was ever actually delivered or not, the placing of it upon record by the intestate gave notice to the world that the title passed out of him into his father.

(a) If there be errors in the charge, yet the verdict is right and should not be set aside.

May 13, 1889.

Charge of court. New trial. Title. Deeds. Estoppel. *Bona fides.* Before Judge FAIN. Dade superior court. September adjourned term, 1888.

Emma McCord and Willie Taylor, as heirs at law of C. C. R. Taylor, on August 30, 1887, brought ejectment against F. M. Street. A demise was laid also in the name of E. T. Rogers, surviving partner of Rogers & Taylor, a firm composed of E. T. Rogers and C. C. R. Taylor. Mrs. McCord was formerly the wife of C. C. R. Taylor, and Willie Taylor is their child, and is about twenty-two or twenty-three years old. They are his only heirs at law. He died in February, 1873. On February 10, 1871, Mary McGlohorn and her husband, Tandy McGlohorn, conveyed the property in dispute to Rogers and Taylor, as partners, in consideration of $5,000. On the same day, a deed was made by Rogers & Taylor to Reuben L. Taylor, conveying the property in consideration of $5,000. These two deeds were recorded on May 11, 1871, upon the same book, one upon pages next following the other. On December 13, 1882, Reuben L. Taylor conveyed the property to the defend-

ant in consideration of $2,500; and the deed was recorded January 30, 1883. In 1872, Mrs. McCord applied for and had set apart a homestead of $2,000 in lands of C. C. R. Taylor; and the premises in dispute were not described or set forth in her schedule or petition. The plaintiffs did not give in the premises for taxes in 1871, 1872 or 1873. The plaintiffs introduced testimony to show that the deed to R. L. Taylor was never delivered to him, but the possession of it was retained by C. C. R. Taylor until his death, and that it had been made to secure a contemplated indebtedness to R. L. Taylor. A witness testified that he drew this deed and the deed from the McGlohorns at the same time; that the former was signed before the latter; that they were handed to C. C. R. Taylor, who gave them to another person and asked him to go and get the McGlohorn deed executed; that it was some time afterwards before this was done; and that the two deeds were then sent to be recorded. C. C. R. Taylor had, before any of these deeds were made, talked with the witness about wanting to have the land conveyed to his father, whom he wished to be his security to enable him to buy more goods. The witness further stated that C. C. R. Taylor showed him the deeds very shortly before his death, for the purpose of ascertaining that they were all right, as he had heard that Mrs. McGlohorn was threatening to try to recover the land. Mrs. McCord testified that, four days after the death of her husband, C. C. R. Taylor, Dr. Brock came to her house and asked for the valise containing the McGlohorn deeds, opened it, took out an envelope containing them, and said, "These are your McGlohorn deeds; I give them to your pa Taylor," who took them. She asked if she ought not to be allowed to keep them; and Brock replied, "Your pa Taylor will give them to you

at the proper time", and R. S. Taylor (who was present) repeated this promise and took the papers away. They had staid in that valise for a year or so previously; it was the valise her husband put his particular papers in, and staid in her wardrobe; when he wanted it, she would get it and give it to him. In part, she was corroborated by her father. A witness testified that C. C. R. Taylor put him in possession of the land as his tenant in the fall of 1871, and he remained there two years, accounted to C. C. R. Taylor for the rents, recognized him as landlord and knew no one else in that relation; that after his death witness met R. L. Taylor, who said the land belonged to him, but whatever arrangement C. C. R. Taylor had made he would carry out; that before his death, C. C. R. Taylor said he would have the land for sale to get money to be used in a proposed enterprise with witness, and also said his father had a deed to the place and he (C. C. R. Taylor) had it secured so that he could sell it and get the money to use; and that witness, in the fall of 1873, gave up possession to R. L. Taylor and left the rent for that year (corn) there, and R. L. Taylor moved in, but no one but C. C. R. Taylor claimed the land before his death.

The evidence for the defendant tended to show that he bought the land from R. L. Taylor without notice of adverse claim; that it was then in possession of a tenant of R. L. Taylor; that defendant had put valuable improvements on it; that R. L. Taylor made large advances to the firm of Rogers & Taylor and took the deed of C. C. R. Taylor in payment therefor, and after his death settled the whole of the firm business with Rogers, the surviving partner, and paid him $500, the matters in dispute (one of which was as to whether Rogers had paid his part for the land in question) be-

ing submitted to friends, and their decision being abided by, and all the papers, accounts, etc. being then burned. R. L. Taylor testified that he had his deed to the land some months before C. C. R. Taylor's death. He denied Mrs. McCord's testimony as to his coming to her house and getting the deeds under the circumstances stated by her, or that they were in the valise, etc. Some books of account of the firm of Rogers & Taylor were introduced, probably to show that that firm owed R. L. Taylor a considerable sum when C. C. R. Taylor died. Apparently they also showed that R. L. Taylor was at previous times indebted to the firm in various amounts. R. L. Taylor's wife testified that her husband bought the land in C. C. R. Taylor's lifetime, paid for it and gave her the deed, and she put it away, etc. Some of the evidence for the defence seems to indicate that C. C. R. Taylor, while in life, recognized the title as being in R. L. Taylor.

The jury found for the defendant. A new trial was denied, and the plaintiffs excepted.

GRAHAM & GRAHAM, for plaintiffs.

R. J. McCAMY and LUMPKIN & BROCK, for defendants·

SIMMONS, Justice.

Emma McCord and Willie Taylor, as heirs at law of C. C. R. Taylor, brought ejectment against Street for a certain tract of land. The evidence will be found in the official report. On the trial of the case, under the evidence and charge of the court, the jury returned a verdict for the defendant. A motion was made for a new trial, based principally upon alleged errors in the charge of the court to the jury; which motion was overruled by the court, and the plaintiff excepted.

Whatever errors may have been committed by the court in the charge to the jury, we think the verdict was right and should not be set aside. The evidence shows that C. C. R. Taylor, under whom the plaintiffs claim, sold this land to his father, and made and executed a deed therefor to his father, and that Taylor, the son, had the same recorded in the clerk's office according to law. The son lived several years after this deed was recorded. After his death, the father went into possession of the land, occupied it and exercised acts of ownership over it for years, when he sold it to Street, the defendant. Street purchased without notice of any claim of the plaintiffs to the land. If C. C. R. Taylor, under whom these plaintiffs claim, were alive and had brought this suit, under the facts of this case, he would be estopped from setting up title to this land. These plaintiffs claiming under him are likewise estopped. Whether the deed was ever actually delivered or not, the plaintiffs' intestate had it placed upon record, thereby giving notice to the world that the title passed out of him into his father. Street seeing this record and the father in possession, purchased the land without notice and in good faith, and it would be wrong to allow him, under these circumstances, to be ejected from the land by the heirs at law of C. C. R. Taylor, Taylor having put it in the power of his father to sell the land to an innocent purchaser.

Judgment affirmed.