## EGLESTON v. TRUST COMPANY OF GEORGIA,
### executor, et al.

1. Where a provision in a will is clear, certain, and definite in regard to a bequest, a codicil which is not certain and definite, its language being capable of some other reasonable construction, and which makes non-mandatory the terms of the original bequest only as to the specific form of fulfillment, and does not alter the mandatory character of the original bequest as to its general purpose, will not work a revocation.

2. Where a testator empowers his executors "to provide for any other charitable object which may appeal to them; and also to delay the time for carrying out this provision as adopted and (or) amended by them," such provision is unenforceable, because too uncertain and indefinite both as to the object in view and as to the time for performance, and because authority for indefinite delay is equivalent to authority for non-performance.

JULY 11, 1917.

Equitable petition and intervention. Before Judge Pendleton. Fulton superior court. August 25, 1916.

The Trust Company of Georgia, as executor of the will of Thomas Egleston, deceased, filed its petition for construction of certain items of the will and codicil, and for general direction. DuBose Egleston filed an intervention in which he insisted that the codicil worked a revocation as to item seven of the will; but that the codicil itself was too indefinite and uncertain in meaning to be legally enforced as to the property referred to in items seven and thirteen, and that as to this property an intestacy should be declared. Item seven was as follows: "After the payment of the legacies and annuities provided in items three, four, and five of this will, I bequeath and devise the sum of one hundred thousand ($100,000.00) dollars, out of my estate, to be expended by my trustee, with the advice and consent of the said Rev. W. W. Memminger, Alexander C. King, and Beverly M. DuBose, of Atlanta, Georgia, their successor, or successors, as hereinafter provided, for the purchase of a lot and the erection thereon of a hospital for children, the same to be known as the 'Henrietta Egleston Hospital for Children.' This hospital I desire to be a special memorial to my precious mother; and to that end I direct that when the said building is completed the oil portrait of my mother, now in my residence, be placed in some appropriate room in said institution and there kept. . ." That part of the codicil necessary for a determination of the issues raised by the intervention

was as follows: "My will provided for the creation of a children's hospital; but I now give the executors and coexecutors full powers to set aside this provision, and to provide for any other charitable object which may appeal to them; also to delay the time for carrying out this provision as adopted and (or) amended by them." The Trust Company of Georgia and others filed demurrers to the intervention. Upon the hearing the court sustained the demurrers and dismissed the intervention; and the intervenor excepted.

*H. A. Alexander* and *C. H. & R. S. Cohen,* for plaintiff in error.
*Anderson & Rountree* and *King & Spalding,* contra.

GILBERT, J. (After stating the foregoing facts.) Thomas Egleston, a wealthy bachelor residing in the city of Atlanta, in November, 1912, executed his last will and testament. In August, 1915, while ill, and about to undergo an operation in a Philadelphia hospital, he executed a codicil. He died February 6, 1916, leaving no brother or sister, or father or mother.

1. A search of reported cases would probably fail to disclose another such testamentary document. The writer doubts if this will has ever been surpassed in its catholicity of charity, of loving remembrance of friendship, and evidences of that most beautiful sentiment, the love for mother. He bequeathed his large estate to selected charities, to the rector of his church, to numerous personal friends, to the wife of a friend, to children of his friends, and children of his mother's friends, to his godchild and his namesake, to business employees and domestic servants, as well as to colored nurses of his mother. In addition to the bequests in memory of his mother, heretofore mentioned, he provided an annuity to purchase and plant roses in the cemetery lot where his mother lies buried, and another annuity for cut flowers to be placed there each Easter Sunday, and still another annuity for cut flowers to be placed there on the eleventh day of September each year, the birthday of his mother. By far the largest of his devises was the sum of $100,000 for the building of a hospital for children, to be known as the "Henrietta Egleston Hospital for Children," in memory of his mother. When said hospital had been completed the oil portrait of his mother was to find there its permanent home, and at the same time that institution was to receive the annuities and execute the trusts imposed in regard to the placing of flowers about his mother's tomb. Such is the will we

are called upon to construe. It is insisted that the provisions of the codicil constitute an express revocation of item seven of the will in regard to the "Henrietta Egleston Hospital for Children." It is further insisted that this fund should be paid by the executors to the plaintiff in error and to others named in the intervention. It is argued that the power to set aside, as stated in the codicil, works an express revocation, because it so changes a mandatory provision as to make it non-mandatory, and that "it is an indispensable requisite of a bequest that it be mandatory in its terms;" also that the language used in the codicil, seeking to empower the trustees with authority to provide for any other charitable object, is too indefinite and uncertain to be enforceable. The conclusion drawn is that since the bequest in the original will for the hospital is revoked, and the substituted provision to select another charity is void, as to the funds in question "Thomas Egleston died intestate." Thus the contention of the plaintiff in error presents itself in the form of a syllogism, or logical formula, the two premises being, (1) the revocation; (2) the substituted provision is unenforceable; the conclusion, intestacy as to the fund.

Our acceptance of this conclusion depends upon whether or not both of these premises are true. But, inasmuch as we can not subscribe to the first or major premise, the conclusion must necessarily fall. We can not agree with the able counsel for the intervenor that the testator ever empowered his trustees to set aside the provision in his will for the building of a memorial, of a charitable nature, to his mother. What he sought to do was to empower his trustees to change the specific character of the memorial from that of a children's hospital to some other form of charity. It is to be noted that if the executors did not elect to do so, it was not obligatory upon them. It is also to be noted that if this provision revokes the devise in item seven for a children's hospital, and substitutes some other form of charity which is unenforceable for any reason, then the whole scheme of building and maintaining some form of charity as a memorial to his mother would fail.

Among all rules for the construction of wills, none are so vital, so absolutely essential, to the principles of right and justice as that the intention of the testator must prevail. This rule applies with equal force in construing the codicil, since the will and the codicil must be construed together. The same rule must guide in de-

termining whether there is a revocation. It is a general principle to construe a codicil so as to interfere as little as may be with the dispositions in the will. Hawkins on Wills, 9, and authorities cited. It is also a general rule that the provisions of a will are not revoked by a codicil, the language of which is capable of any other reasonable construction, or is less clear and certain than that used in the will. Thompson on Wills, § 463; Page on Wills, 299; Jarman on Wills (American ed.), 343; Hawkins on Wills (2d ed.), 9. It may not be amiss to say, in this connection, that the codicil was drawn by the testator without the aid of counsel, and under conditions not conducive to clear thought, and without having access to the original will.

It is inconceivable to us from a reading of the testator's original will, prepared with great skill and elaborate precision, literally breathing with filial affection, that it ever was his intention to abandon his ever-present desire to perpetually honor the name and memory of his mother. The codicil itself retains the express desire to leave a charitable memorial of some kind, which, construed together with the will, admits of only one construction, and that is that the general scheme provided for in item seven of the will is to be carried out by the executors, though with power to vary its specific form.

We concede that if the codicil clearly showed the intention of the testator to change the general scheme, as stated in item seven, for a provision for a charity to be constructed and maintained in memory of his mother, from a mandatory bequest to a non-mandatory one resting in the judgment or discretion of the executors, such a writing would work a revocation, and make the entire item unenforceable. But, as stated above, we do not think the codicil can, or was intended to, bear such a construction. While the will is clear, the codicil is decidedly otherwise, and its language is entirely incapable of a reasonable construction that will harmonize with the testator's intention, and with the intervenor's contention at the same time; but it is capable of the other reasonable construction, such as we have placed upon it. The codicil does not work an implied revocation, but it is needless to elaborate upon this question, since the brief of counsel for the plaintiff in error expressly disclaims any contention to that effect.

2. We agree with counsel for the plaintiff in error that the

language in the codicil seeking to empower the executors to set aside the provision for a children's hospital is too indefinite and too uncertain to be enforced, both as to the object in view and as to the time for performance, and because authority to indefinitely delay is equivalent to authority for non-performance. However, as we have held that the codicil did not work a revocation of the items of the will in question, it follows that the trial court did not err in sustaining the demurrer to the intervention.

*Judgment affirmed. All the Justices concur.*