*John J. Bouhan* and *E. Ormonde Hunter,* contra.

---

## COOK, administrator, *v.* FLANDERS *et al.*

1. A deed between Nancy J. Maddox, grantor, and H. R. Maddox and Mrs. M. A. Rains, children of the grantor, "their lifetime, and at their death to be equally divided between" grantor's grandchildren, whereby the

---

Deeds, 18 C. J. p. 196, n. 17; p. 326, n. 62, 63; p. 327, n. 70, 71.

Estoppel, 21 C. J. p. 1088, n. 91; p. 1089, n. 92; p. 1090, n. 93; p. 1100, n. 24; p. 1107, n. 93; p. 1112, n. 42; p. 1117. n. 82; p. 1129, n. 59; p. 1131, n. 71.

Gifts, 28 C. J. p. 655, n. 45.

grantor conveyed a tract of land "unto the said H. R. Maddox and M. A. Rains, and their bodily heirs after their decease," the same to be used by grantor until her death, and "after then to my [grantor's] children and grandchildren as aforesaid, their heirs and assigns," and containing in the granting clause this reservation: "I [grantor] reserve entire control, and reserve the rents and profits arising therefrom until my death, and after my death to be equally divided between my children, and at their death to be equally divided between their children," conveyed to the children of the grantor life-estates in the portions of said tract falling to them under the division of said tract had between them after the death of the grantor, with remainders, in the portion falling to each of the life-tenants under such division, in the children of such life-tenant, to be equally divided between his or her children; and did not create remainders in all of grantor's grandchildren, children of the life-tenants, in the whole of the tract conveyed by the deed, the whole tract to be divided equally between all such grandchildren at the deaths of the life-tenants.

2. Where after the death of H. R. Maddox his only child and the three children of Mrs. Rains, the former believing that it was the intention of her grandmother to give the entire tract so conveyed by her to all her grandchildren in remainder after the death of the life-tenants, divided the entire tract into four parts, and assigned one part of the entire tract to each of such grandchildren of the grantor, and where deeds were prepared to be signed by all the grandchildren to effectuate the division, and were signed by some of the makers, but before such deeds were all executed and delivered, and before the division was finally effected, the child of H. R. Maddox sold and conveyed by her deed the portion of land received by her father in the division of the tract conveyed as above by Mrs. Nancy J. Maddox, each of the grandchildren paying one fourth of the costs of said division, the plaintiff is not, by virtue of these facts, estopped from asserting title to the premises in dispute, the same being the part of the land received by H. R. Maddox in the division of the entire tract conveyed by Mrs. Nancy J. Maddox, between the life-tenants, the grantor of the plaintiff not having received, in the division of this tract among the grandchildren, any land to which she was not entitled before such division was made, nor anything of value for her land so sought to be divided among her and the children of Mrs. Rains. Where the estoppel relates to land, the party claiming to have been influenced by the other's acts or declarations must not only be ignorant of the true title, but also of any convenient means of acquiring such knowledge. Where both parties have equal knowledge or equal means of obtaining the truth, there is no estoppel.

3. The above rulings make it unnecessary to consider other assignments of error. The trial judge erred in directing a verdict for the defendants, and in not granting a new trial.

No. 5744.   MAY 5, 1927.

Complaint for land. Before Judge Camp. Johnson superior court. October 30, 1926.

J. M. Cook brought his complaint against Charlie Flanders and

Mrs Lennie Flanders, to recover certain land. On the trial of this case the following facts were shown: On November 5, 1896, Nancy Jane Maddox executed a deed to a described tract of land, containing 175 acres, more or less. The statement of the parties to this instrument is as follows: "between Mrs. Nancy J. Maddox, of the County of Johnson, of the one part, and H. R. Maddox and Mrs. M. A. Rains, wife of W. J. Rains, their lifetime, and at their death to be equally divided between my grandchildren, of the County of Johnson, of the other part." The granting clause is that "said Mrs. Nancy Jane Maddox, for and in consideration of the sum of five dollars and also for the love and affection she has and bears for her children and grandchildren, the children of H. R. Maddox and Mrs. M. A. Rains, . . has granted, bargained, sold, aliened, conveyed, and confirmed, and by these presents do grant, bargain, sell, alien, convey, and confirm unto the said H. R. Maddox and M. A. Rains, and their bodily heirs after their decease, the same to be used by me until death, after then to my children and grandchildren as aforesaid, their heirs and assigns," the described tract of land. The deed contains this reservation clause: "I now reserve entire control, and reserve the rents and profits arising therefrom for my support until my death, and after my death to be equally divided between my children, and at their death to be equally divided between their children." The habendum clause is: "to the only proper use, benefit and behoof of them, the said H. R. Maddox and M. A. Rains, and their bodily heirs, . . in fee simple." The grantor warrants the "bargained premises unto the said parties aforesaid, their heirs, executors, administrators, and assigns." Nancy J. Maddox died in 1900. Immediately thereafter said tract of land was divided between H. R. Maddox and Mrs. W. J. Rains. Under that division Mrs. Rains took approximately 100 acres on the southwest side of the tract, and H. R. Maddox took the remainder thereof, which by actual survey contained 93-3/4 acres. Maddox went into actual possession of his portion of land received under said division, and Mrs. Rains went into actual possession of the part received by her thereunder. Maddox remained in possession of the land received by him under the division until his death in September, 1924. He left Maude Gatlin as his only child. Mrs. W. J. Rains remained in possession of the land received by her under the division until

her death in 1901. She left surviving, her three children, Luther Rains, Lennie Flanders, and Ollie Rains, who went into possession of that portion of land so received, and have since remained in possession. The first two named of those children were in esse when the above deed was executed.

On December 22, 1924, Maude Gatlin, for a valuable consideration, executed to J. M. Cook her deed purporting to convey the portion of the land received by her father, II. R. Maddox, in said division. In her deed she describes this land as containing 100 acres, more or less. C. S. Claxton acted as the agent of J. M. Cook, and conducted the negotiations which led to the sale by Maude Gatlin of the premises in dispute to Cook. Claxton gave this account of these negotiations: He had a conversation with W. C. Brinson, an attorney for the defendants, relative to these premises, before he traded. , Mrs. Gatlin wanted to trade it to Cook, and there was a question as to whether she owned all the land her father was in possession of at his death. The Rains tract and the Maddox tract had been surveyed into four parts. Mrs. Gatlin was claiming all that her father was in possession of. Rains was claiming half of that tract. Claxton asked Brinson if he had a plat covering this particular piece of land, and Brinson replied that he had, and let Claxton have this plat, being the plat attached to the deed from Mrs. Gatlin to Cook. Brinson told Claxton that a division had been agreed to out there by Mrs. Gatlin. The land·had been surveyed at that time into four parts. Mrs. Flanders was to get 50 acres of the Maddox tract. Mrs. Gatlin contended, at the time she sold this land to Cook, that she owned all of the land that her father had died in possession of. Mrs. Gatlin, at the time she made the deed to Cook, was transferring her interest, whether it was one acre or one hundred acres. She did not tell Claxton that she had only fifty acres; she said she did not know. She said that she thought she had what her father died in possession of, and that was one hundred acres; and she said she had been advised by Brinson that she only had fifty acres. Mrs. Gatlin did not put Claxton on notice that there had been a division out there, that a plat had been made, and that she only had fifty acres. She told Claxton that there had been a division out there, but she said she had not made a deed in accordance with said division. She did not tell Claxton that she had accepted the

home place as her part.  She said that Rains said that was for her.  She said that Rains said that her father wanted her to have the home place.  She did not say that she had accepted the home place.  She did not tell Claxton that the children of Mrs. W. J. Rains claimed the other two tracts.  Brinson gave Claxton two separate plats, showing the division between Lennie Flanders and Maude Gatlin.

· W. J. Rains, for the defendants, testified as follows:  I know about the division of the land left by Mrs. Maddox to my wife and Henry Maddox.  This division was in January, 1900.  Maddox and Mrs. Rains took possession of the part coming to them under that division.  I was present when the division was made between my children and Maude Gatlin.  All were present but Luther.  Maude Gatlin and my three children agreed, and made that division among themselves, and accepted their parts under that division.  Maude Gatlin wanted to see Mrs. Rains' deed, after her father died, and we let her see it.  Did not hear Brinson or anybody put Mrs. Gatlin on notice that she could hold the entire tract, but he told me that he did.  Brinson stopped the division and notified her of that fact.  I think he notified her that she could possibly hold the entire tract, and she said she wanted it like her grandmother had left it, and that was a one-fourth interest.  After the division was made and each one drew their part, Lennie Flanders went into possession of her part, and the other heirs went into possession of their parts of the land, and they all paid their part of the expenses of the survey.  They did not pass any deed.  Nobody passed a deed.  Do not know whether Mrs. Gatlin changed her mind about it or not.  She conveyed it to somebody else.  She conveyed whatever interest she had under her grandmother's deed, whether it was much or little, I suppose.  Maude Gatlin got right smart the advantage in the division.  Brinson said she was getting three or four hundred dollars.  She was getting one fourth of it.  She was the only child of Henry Maddox.  Henry Maddox was in possession of one part of the tract, and my wife was in possession of · the other part long before Mrs. Maddox died.  My wife remained in possession of her part until she died.  My children and I went into possession of that same piece of land, and stayed until Henry Maddox died.  Lennie Flanders went into possession of the land in dispute before Maude Gatlin conveyed her part to Cook.  I

don't think she moved on it and actually took possession of it until after Maude Gatlin conveyed her part to Cook. Each one accepted their part of the division at the time the division was made.

Maude Gatlin testified for the defendants: H. R. Maddox was my father. I know about the division of the land between Mrs. Flanders, Ollie Rains, Luther Rains, and myself. I was present when the division was made. Col. Brinson represented me in that division. It was to be equally divided. I did not know anything about my father's business. After his death I went to Col. Brinson, and got him to look after it for me. He told me that I could get half of the land, and I told him that I didn't want it that way. I told him that I wanted to give Lennie one fourth of it. They held up the survey one afternoon to see what I wanted to do about the division. I considered it thoroughly before I agreed, and I told them that I only wanted one fourth of the division, and they went ahead and ran it that way. I did not want the 100 acres. This land was divided into four parts. I got the home place, and Mrs. Lennie Flanders the other part. I agreed to that division at the time it was made. We all paid one fourth of the expense of the survey. The deed had been made at that time, and had been sent to Luther to be signed by him. He lived in Chicago. I told Col. Claxton at the time that I had not got my deed back. I told him that the deed was on its way back from Luther. Claxton said that I could get the entire 100 acres. I told him that I didn't want it. I told Col. Claxton that Mr. Brinson had already put me on notice that I could very likely hold the entire hundred acres, and I told him that I didn't want it. I told him that I already had 50 acres, and that I was going to live up to the division.— The affidavit hereinafter referred to was exhibited to this witness, and she said she made it after she read it. All the time she was reading it she was trying to explain about it, and he would not listen to her, he would go ahead and tell her that she could get the entire 100 acres. He only paid me for the value of 50 acres. I was made to sign this deed to Cook by my husband, because he said Col. Claxton was in the right. Claxton was not there when my husband made me sign it. My husband had already told me to sign it, and I signed it in the presence of Jim Davis. My husband told me to sign it before Col. Claxton

came out there. He told me that Col. Claxton was coming out there that afternoon, and for me to sign it, and I said "John, I have signed a deed for 50 acres, and there is no use to go into further details, because I have already deeded Lennie the other 50 acres." I did not care anything about giving away 50 acres of land. I would not have sold Cook the 100 acres for $900, but I did give away 50 acres. I did not get any consideration for the 50 acres at all. I did not make Cook a deed before I did Flanders. The deed to Flanders had already been made and had been sent to Chicago for Luther to sign, and we had not got it back at the time I signed this deed to Cook. Claxton knew that I had not signed the deed. Claxton knew that the land had been divided. I told him that I had not signed the deed (referring to the deed to Lennie Flanders). I read my deed to Cook before I signed it. My husband did not make me sign this deed. We talked it over before I signed it. Nobody made me sign it. I signed it freely and voluntarily. In that deed I conveyed all I had out there, whether it was much or little, but I had already agreed on the division out there.

W. C. Brinson testified for the defendants: I was present at the division of this land. I represented Mrs. Gatlin. Before this division I advised her I thought she could get the entire 100 acres. In a day or two she came back and told me she wanted me to represent her in the division of their land out there, and she said she understood her grandmother wanted the land divided equally between the four grandchildren, and for that reason she wanted it divided into four parts and let each have a part, and for me to see that she got what belonged to her. I then got a surveyor and went out there to have it divided. Mrs. Gatlin was not there when we met for the purpose of surveying it. I would not agree to go ahead and divide it and draw lots without her consent. I told Ollie and Will Rains that I represented her and felt like she was entitled to all of it, but that if she was willing to divide it into four parts they ought to concede her something, and I wanted the home place. That was where her father had improved it, and I wanted 50 acres off from that. They agreed to it. They went ahead and surveyed it. All the parties instructed me to go ahead and prepare the deeds, and I prepared four deeds. I mailed the first to Luther Rains, who lived in Chicago. He mailed it back, and it was not

properly executed. I sent it back to him and instructed him how to sign it and who to sign it before. While we were having the division John Gatlin, Maude's husband, came in. He called me off to one side and asked me if I thought his wife could hold the 100 acres. I told him I thought she could. He said I had better see his wife about it. I told him I had already talked with her about it, but that he could talk with her about it if he wanted to. The matter broke up then, and I came back to town. John and Ollie came up to me here and said that John had talked with Maude, and they said to go ahead with the division as originally started. I saw Maude Gatlin and asked her if she wanted to go ahead with the division and divide it into four parts, and she said, yes, that was what her grandmother wanted them to do. I told her that I had an agreement for her to get the home house. She said that was all she wanted. It was after Christmas when Claxton approached me about Mrs. Gatlin's part. We had sent a deed to Luther Rains. The other three deeds were drawn at the same time, and we were waiting for the deed from Luther to come back for them all to sign up. I notified Claxton of that fact at the time. I took the plat from the Lennie Flanders deed that I had prepared, and took the plat from the home-place deed that I had prepared, and gave them to Claxton to draw his deed, and he has copied the two plats into this deed here. These two plats I have on that deed represent the one to Maude, and the one made to Lennie Flanders. The division had been made about 30 days before that was signed. Lennie Flanders drew the other part of the H. R. Maddox place that did not contain the home.

The defendants introduced a deed dated October 30, 1924, purporting to be made between Mrs. J. H. (Maude) Gatlin and Mrs. C. L. Flanders, parties of the first part, and W. O. Rains and Luther Rains, parties of the second part, but signed only by Mrs. Gatlin. This deed recites that it is made for the purpose of complying with the deed from Mary J. Maddox to H. R. Maddox and Mrs. W. J. Rains, and conveys 100 acres of land, being a part of the tract embraced in said deed from Mary J. Maddox to H. R. Maddox and Mrs. W. J. Rains. Defendants introduced a deed from Mrs. J. H. (Maude) Gatlin, W. O. Rains, and Luther Rains to Mrs. C. L. Flanders, dated October 30, 1924, which contains the same recital as that contained in the deed last referred to,

and conveys a described tract of 50 acres of land, being a part of said 175 acres above referred to. Defendants introduced a deed purporting to be between Mrs. C. L. Flanders, W. O. Rains, and Luther Rains, of the first part, and Mrs. J. H. (Maude) Gatlin, of the second part, dated October 30, 1924. This deed contains the same recital as that contained in the two deeds last above mentioned, and conveys a described tract of 50 acres of land, being a portion of said 175 acres above referred to. This deed was executed by Luther Rains alone, and was attested by one unofficial witness. The plaintiff introduced an affidavit of Mrs. Maude Gatlin, sworn to on January 14, 1925, in which she deposed that her father acquired title to 100 acres of land, more or less, under the above deed from Nancy J. Maddox to H. R. Maddox and Mrs. W. J. Rains, and that he received possession of said land under the division between him and Mrs. W. J. Rains after the death of Mrs. Nancy J. Maddox; that she is the only child of H. R. Maddox, and under said deed from Nancy J. Maddox she became the sole owner of said land; that shortly after the death of her father she was advised by W. J. Rains and by the children of Mrs. W. J. Rains that the land embraced in the deed from Nancy J. Maddox should be surveyed into four equal parts; that, not knowing what her rights were in the matter, she consented for the surveyor to go upon said land and divide the same into four lots; that after said survey was made, and before executing any deed to perfect said division, and before any change in possession or occupancy of said land, she sold her interest in the said 100 acres of land to J. M. Cook, on December 22, 1924; that this deed was made to convey her interest in said land, whatever it was, under the deed from Nancy J. Maddox to H. R. Maddox and Mrs. W. J. Rains; that she immediately surrendered possession of said land to J. M. Cook; that on January 10, 1925, W. J. Rains and W. C. Brinson, Rains being the husband of Mrs. W. J. Rains and the father of Lennie Flanders, induced her to sign a deed in connection with the division of said property, when she was not in possession of any part of it, nor was she claiming any interest in the same, having conveyed her interest in said lands to J. M. Cook. She was 30 years of age.

The court directed a verdict for the defendants. The plaintiff made a motion for new trial upon the general grounds, and upon the special grounds that the court erred: (1) in directing a

verdict for the defendants; (2) in permitting Maude Gatlin to testify to the division of said lands between her and the other remaindermen under the deed from Nancy Jane Maddox; and (3) in admitting in evidence the deed from Maude Gatlin to the defendants, evidencing said division of said lands between the remaindermen, on the ground that Maude Gatlin had nothing to convey after she had made her deed to J. M. Cook. The court overruled the motion for new trial, and the administrator of J. M. Cook excepted.

*C. S. Claxton* and *J. L. Kent,* for plaintiff.

*W. C. Brinson* and *B. B. Blount,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. The proper decision of this case depends upon the correct construction of the deed under which both parties claim. The pertinent terms of this instrument are set out in the foregoing statement. The plaintiff contends that under this deed the child or children of the two life-tenants took respectively in remainder the portions of the land thereby conveyed, and which fell to the life-tenants under the division thereof made between the life-tenants upon the death of the grantor. In other words, the plaintiff contends that the only child of H. R. Maddox, upon his death, took as remainderman the portion of said land which he got under said division between himself and his co-life-tenant, and that the children of Mrs. Rains took as remaindermen, upon her death, the portion of said lands which she acquired under said division. The defendants, who are children of Mrs. Rains, contend that upon the death of the two co-life-tenants, notwithstanding said division of said lands between the latter, their children took in remainder the whole of said lands as tenants in common, and that the same should be divided among all of the grandchildren of the grantor in said deed, per capita, and not per stirpes.

This deed was very inartificially drawn, and its construction is not free from doubt. The language, "between Mrs. Nancy J. Maddox, . . of the one part, and H. R. Maddox and Mrs. M. A. Rains, wife of W. J. Rains, their lifetime, and at their death to be equally divided between my grandchildren," found in the statement of the parties to the instrument, would seem to indicate that the grantor intended to convey to her two children, H. R. Maddox and Mrs. M. A. Rains, a life-estate in the lands conveyed by this

instrument, and that at the death of these life-tenants this land should be equally divided between all her grandchildren, per capita and not per stirpes. The language in the granting clause, "that the said Mrs. Nancy J. Maddox for and in consideration of the sum of five dollars and also for the love and affection she has and bears to her children and grandchildren, the children of H. R. Maddox and Mrs. M. A. Rains, . . has granted, bargained, sold, aliened, conveyed, and confirmed" the described land "unto the said H. R. Maddox and M. A. Rains, and their bodily heirs after their death, the same to be used by me until death, after then to my children and grandchildren, . . their heirs and assigns," standing alone, would seem to manifest an intention to convey to her children a life-estate in the lands conveyed by this deed, with remainder to all her grandchildren. But in the granting clause the grantor reserves unto herself the control of, and also the rents and profits arising from, said land for her support until her death, and then provides that after her death the land conveyed by said deed is "to be equally divided between" her "children, and at their death to be. equally divided between their children." This provision modifies and limits the meaning of the language above quoted from the statement of the parties to the deed, and the above language quoted from the granting clause of this instrument. It provides for the division of the tract of land conveyed by this deed between the life-tenants on the death of the grantor. The purpose evinced by this provision was to have this tract of land divided into two equal portions, and to vest in each life-tenant title to and possession of one of these portions. The purpose of the grantor was to make her two children, not tenants in common of the tract of land conveyed by her deed, but tenants in severalty as to the respective portions of this land falling to them under its division upon her death. The provision for the division of this land at the deaths of the life-tenants, among their children, refers, not to the division of the whole tract among the grandchildren, but to the division of the portion of the whole tract, received by each life-tenant, among his or her children. Division among the children of the grantor was to take place and did take place at her death. The division among the children of the life-tenants was to take place upon the deaths of their respective parents. This division was to be among the children of the life-tenants severally, and not jointly. As a

life-tenant died, the portion of said tract going to such life-tenant was then to be divided. How? Clearly, not among the children of both life-tenants, but among the children of the life-tenant so dying.

Mrs. Rains died in 1901; and upon her death her part of said lands was taken possession of and has been used and enjoyed by her children. H. R. Maddox did not die until September, 1924. No division of his portion of this land could be made until his death. We think it fairly clear that it was not the intention of the grantor that when Mrs. Rains died the portion of this land which she received upon its division between her and her brother was to be equally divided between her children and the child of H. R. Maddox. It was the intention of the grantor that this portion of the land should be divided between the children of Mrs. Rains at her death. We think it fairly clear that it was not the intention of the grantor that the portion of this tract of land which fell to H. R. Maddox under the division between him and his sister was to be, at his death, equally divided between his child and the children of Mrs. Rains. This construction seems to be in accordance with parental instinct and affection. A parent naturally wishes to give to each of his children an equal share of his estate, and he expects such share to descend to the children of such child. So it is well settled, in the construction of wills, that, in the absence of anything to the contrary, the presumption is that the ancestor intends that his property shall go where the law carries it, which is supposed to be the channel of natural descent, and that to interrupt or disturb this descent, and to direct it in a different course, requires plain words to that effect. *Mayer* v. *Hover*, 81 *Ga.* 308 (7 S. E. 562). The same principle is applicable to the construction of the deed under consideration. So we are of the opinion that under this deed this tract of land was to be divided between the two life-tenants; and when this was done, the portion falling to such life-tenant went to the child or children of such life-tenant in remainder upon the death of the parent.

2. Is the plaintiff estopped from asserting title to the premises in dispute by reason of the fact that his grantor, Maude Gatlin, would be estopped from asserting a claim thereto by reason of her conduct in agreeing to a division of all the land in Mrs. Nancy J. Maddox's deed among all the grandchildren of the latter? An

estoppel may arise by deed. Such an estoppel is mutual. Not only the parties to the deed, but the privies of each, are estopped from setting up any title inconsistent with the deed. *McClesky* v. *Leadbetter*, 1 *Ga.* 551; *Keaton* v. *Jordan*, 52 *Ga.* 300; *Taylor* v. *Street*, 82 *Ga.* 723 (9 S. E. 829, 5 L. R. A. 121). But estoppel by deed can arise only from a valid instrument. *Taylor* v. *Allen*, 112 *Ga.* 330 (37 S. E. 408). Without delivery a deed conveys no title. *Maddox* v. *Gray*, 75 *Ga.* 452. The deeds to effectuate this division were prepared, but not signed by all the parties, and were not delivered in consummation of the division, but delivery of these deeds awaited the proper execution and return of the deed sent to Luther Rains, in Chicago, for its execution. Before this was done, Maude Gatlin executed her deed to the premises in dispute to Cook. So the plaintiff was not estopped by deed from asserting title to the land. Maude Gatlin did not make a valid gift of the land in dispute to the defendants or either of them. To make a gift of land there must be a conveyance in writing. Civil Code (1910), § 4146; *Wyche* v. *Greene*, 11 *Ga.* 159. Was Maude Gatlin estopped by matters in pais? Such estoppels are not generally favored. *Evans* v. *Birge*, 11 *Ga.* 271; *Groover* v. *King*, 46 *Ga.* 101; *Crim* v. *Crawford*, 47 *Ga.* 628; *City of Atlanta* v. *Hunnicutt*, 95 *Ga.* 143 (22 S. E. 130). Under this division Maude Gatlin got nothing to which she was not entitled under the law. She received nothing from the other parties to the division. It would not be more inequitable and unjust for her to assert title to this land than for the defendants to keep her land. Besides, the estoppel relates to the title to land. In such a case "the party claiming to have been influenced by the other's acts or declarations must not only be ignorant of the true title, but also of any convenient means of acquiring such knowledge. Where both parties have equal knowledge or equal means of obtaining the truth, there is no estoppel." Civil Code (1910), § 5737. So we are of the opinion that the plaintiff was not estopped from asserting his title to the premises in dispute.

3. The above rulings make it unnecessary to consider other assignments of error; and we are of the opinion that the trial judge erred in directing a verdict for the defendants, and in not granting a new trial. *Judgment reversed. All the Justices concur.*