BAKER *v.* CITIZENS & SOUTHERN NATIONAL BANK
*et al.*

No. 8594.   JULY 16, 1932.

*Robert B. Blackburn,* for plaintiff.

*Alston, Alston, Foster & Moise* and *W. O. Wilson,* for defendants.

RUSSELL, C. J. (After stating the foregoing facts.) The controversy in this case is as to the distribution of a fund in the hands of the court arising from the rentals and sale of certain property on Whitehall Street in the City of Atlanta. The Citizens & Southern National Bank, having paid the moneys claimed to be due by it upon the lease of the property as well as the purchase-price, is no longer involved in the present litigation. The other parties, Henry J. Baker, William A. Baker, and H. L. Baker, all claim to be entitled to participate in the fund under the provisions of the will of Charles D. Baker. Henry J. Baker, the plaintiff in error, claims that he is entitled to one half of the fund, while the defendants in error contend that the fund should be divided into three parts, which should be apportioned equally between Henry J. Baker, William A. Baker, and H. L. Baker. The plaintiff in error insists, that, properly construing the will of Charles D. Baker, the estate of the testator after the death of his wife, Barbara Baker, in 1930, could only be divided into two parts between the only two children sur-

viving at the death of the life-tenant, to wit, Henry J. Baker and William A. Baker; this upon the theory that as the contingency mentioned in the first item of the will did not ensue (that is, the testator's wife never remarried), nothing vested in any child of the testator who died previously to the death of the life-tenant. Consequently it is insisted that at the death of the widow (the life-tenant) there were only two remaindermen and legatees, Henry J. Baker and William A. Baker. It is strenuously insisted that Charles Baker having died before his mother, his only daughter, Otelia Baker, takes nothing under the will, and of course therefore her deed to William A. Baker conveyed nothing, and the deed of William A. Baker to H. L. Baker likewise conveyed nothing.

In the construction of wills, as of all other writings, the first step to be taken is to arrive, if possible, at the intention of the maker of the instrument, in order that effect may be given to that intention. And the intention of the testator is not generally to be derived from mere consideration of fragmentary excerpts from the will, but from examination and consideration of every word which is included within the "four corners" of such instrument. Generally, one who is about to make a final disposition of his property to take effect after his death has a testamentary scheme or plan, which may take into view many contingencies which the testator may foresee and for which he wishes to provide, in order to protect the interest of his intended beneficiaries. If the will in the present case is considered as a whole, it seems very plain that the testator in this instance did not intend that any of his children or of his children's children, should they have any, should be excluded from participation in his property. The use of the adjective "equal" instead of the appropriate adverb "equally" evinces that the testator was no grammarian. He may have been no more learned in the law than he was in grammar. But the equality which he sought was intended to be substantial. Items one and two of the will must be construed together, for each relates to the same contingency— the marriage or non-marriage of his wife after his death. In the first item he gives his wife a life-estate in "all the property that I have, both real and personal, as long as she shall live," with a proviso that if she does marry, then all the property is to be divided between her and four named children. She is to become a tenant in common. The second item does not withdraw the life-estate in the

entire property from the wife, but provides that if she dies without marrying, "then the property to be divided equal among my children then living, or their children." In the first item it can well be said that the wife's life-estate in the entire property was contingent, because had she married again she would not have had a life-estate in the entire property, but would have been only a tenant in common entitled in fee to a one-fifth interest in the testator's property. The use of the words, "If my beloved wife dies before marrying after my death," following as they do the explicit direction as to the disposition of all his property to his wife and children as tenants in common, would indicate even to a casual reader that the testator rather anticipated that his wife (a young woman at the time the will was executed) would probably marry again. But the testator, in drawing his will, reflected that perhaps his wife might not marry again. His estate in that event would not pass immediately to his heirs as contemplated in the first item. And so to provide for this contingency he says, in the second item of his will: "If my beloved wife dies before marrying after my death, then the property to be divided equal among my children then living, or their children." What can the words to be equally divided "among my children then living, or their children," mean, except what the language plainly imports? If the children are living, each will get an equal share. The words used can not be construed to mean that the testator's property is to be given to a living child and his children, and therefore they can mean nothing except that the devise is to the children of such children of the testator as may die before the termination of the life-estate. The testator wanted his property divided equally among his children, if they were all living; if any of them were dead, he wished the children of the dead child to stand, in accordance with the laws of inheritance of this State, in the shoes of their deceased parent. In construing wills in this State, we lean, in cases of doubt, to the construction which is in accordance with the rules of inheritance. If the language used by this testator is so ambiguous that the will falls, then the judge of the lower court in this case is nevertheless right, because in the absence of any will Otelia Baker would inherit the share of her father, Charles Baker, and her deed to William A. Baker and his conveyance to H. L. Baker would both be good and effectual conveyances,

Learned counsel for the plaintiff in error insists that grandchildren can not take in a will under a bequest to children as a class, and cite in support of that proposition *Walker* v. *Williamson,* 25 *Ga.* 549, *Lyon* v. *Baker,* 122 *Ga.* 189 (50 S. E. 44) ; *Davidson* v. *Blackwell,* 152 *Ga.* 48 (108 S. E. 469), and *Hancock* v. *Griffin,* 171 *Ga.* 787 (156 S. E. 659). We admit the proposition as stated in the cases cited, but nothing said in this case is in conflict with what is ruled in any of those cases. They are easily distinguished from the case at bar. It merely happens that "their children," meaning children of the testator's children, would be grandchildren. But there is no provision of law, of which we are aware, ·that prohibits a testator from making a devise to a grandchild or grandchildren. It is plain from the context of the will, and by the use of the word "their," that there is no attempt in this case to have grandchildren take under a bequest to children as a class. Under the laws of inheritance, if there were no will Otelia Baker would stand in the place of her father, Charles Baker, and, as already stated, she would be entitled to one third of the funds now in court for distribution. If there could be any doubt as to what is meant by the words "or their children" as used in this will, it is well settled that the courts in this State always lean to that construction which is most in accord with the laws of inheritance. As said by Judge Lumpkin in *Clifton* v. *Holton,* 27 *Ga.* 321, 342 : "Courts should, in this country, lean to that interpretation of wills which carries out the provisions of the statute of distribution, rather than to that which defeats them. For this statute, after all, is our American Magna Charta; doing more to perpetuate our republican institutions than the constitution. For without the accumulaton by law of property in the hands of the few, there can be no privileged classes. Justice and equity favor this construction; why should not all who stand in the same degree of relationship to the testator, at the time this estate took effect, share alike in his bounty? The testator had but one object in view, to exclude his wife and her kin from any further participation in his property. He provided handsomely for her, and gave a small legacy to a daughter, probably by a previous marriage. He did not intend them to come in again. Hence the employment of the terms, 'blood-relations.' It was not so much to designate which of his blood kin should take, as to shut out those who should not. This

is the key to the will." In *Fraser* v. *Dillon,* 78 *Ga.* 474 (3 S. E. 695), it was said, that, "in the absence of anything in the will to the contrary, the presumption is that the testator intended that his property should go where the law carries it, which is supposed to be the channel of natural descent. To interrupt or disturb this descent, or direct it in a different course, should require plain words to that effect. See *Wright* v. *Hicks,* 12 *Ga.* 163 [56 Am. D. 451]. And this rule is laid down in the case of Ferrer et al *v.* Payne, 81 N. Y. 181; 33 Conn. 222; 40 Penn. 115." "In *Sharman* v. *Jackson,* 30 *Ga.* 224, the court had under consideration a deed which gave certain slaves to a person for life, and provided that at his death they were 'to be equally divided among the heirs of the body' of the grantee. It was held that the children of a daughter of the grantee took under the deed per stirpes, and not per capita. Judge Lyon, in referring to the words, equally divided among the heirs, says: 'It is true she says equally divided, but that is to be understood and construed as that equal division made by the distribution laws, that is, that all the heirs related to the first taker equally, or in the same degree, should take equally, while those who were in the same line, but further removed, should take by representation, that is, all together standing in the place of the deceased parent, and taking but the share or proportion which is equal with the shares of the children. This is an equal division among the heirs of Wm. F. Jackson, and it is not the less so that one or more of the shares must again be subdivided into as many parts as there are grandchildren distributees.' . . It will thus be seen that the trend of judicial thought in this State has been, from the time this court was organized, in favor of applying the rule that the words, 'heirs,' 'heirs at law,' or even 'children' under certain circumstances, would require a per stirpes distribution, unless the contrary intention is plainly manifest under the terms of the will." *MacLean* v. *Williams,* 116 *Ga.* 257 (42 S. E. 485, 59 L. R. A. 125). We find no error in the judgment overruling the demurrer.     *Judgment affirmed. All the Justices concur.*