BUCHANAN, guardian, *v.* NICHOLSON, administrator, *et al.*

No. 13836. SEPTEMBER 15, 1941.

*Casler & Douglas,* and *R. C. & Lula G. Whitman,* for plaintiff in error. *Miles W. Lewis,* contra.

BELL, Justice. ■ Some confusion may be avoided by keeping ·clearly in mind the limited scope of the controversy. As indi·cated in the statement, it relates solely to properties bequeathed in items 3 and 5 to Martha Josephine Nicholson for life only, to wit: (1) the share of the Oconee County land received by her under item 3 and designated in the record as lot No. 3, and (2) the share ·of the residue provided for her in item 5. With reference to this land, it appears that in the third item of the will a one-fourth interest in certain land in Oconee County was bequeathed for life to each of four grandchildren named in that item, including Martha Josephine, with remainder over as provided therein. It is the tract received by Martha Josephine through a division of this land ·that is now known as lot 3. The testatrix died in 1930, survived by all of these four grandchildren. One of them, George H. Nich·olson, died in 1936, leaving one child, Hortense Lorraine. Martha Josephine, the life-tenant, died in 1940, leaving no child or ·descendant of a child. The other two grandchildren, Paul O. Nicholson and Augustus G. Nicholson, are still living. Paul O. Nicholson has one child, Augustus Reaves, who was born in 1939. Augustus G. Nicholson has no child or descendant of a deceased ·child. Thus Martha Josephine was survived by only two of the four original life-tenants, to wit: Paul O. and Augustus G., but ·at the time of her death there were also in life the two great-grandchildren of the testatrix, Hortense Lorraine and Augustus Reaves. The testatrix left also a residuary estate, and in item 5 she provided that a designated portion of this should be held for the benefit of Martha Josephine for life, and at her death become

the absolute property of the *remaindermen* mentioned in item 3. It is this part of the residue that is here in question.

In response to the petition for construction and direction as filed by the legal representative, Hortense Lorraine Nicholson, through her guardian, filed an answer asserting an interest in each part of the property so requiring disposition on the death of Martha Josephine Nicholson; and the questions for decision concern only the claim or claims thus presented, any right or claim of Hortense Lorraine as to other property having been settled. In other words, no other person is complaining of the decree, and even her claim is limited to the parts of the estate that were bequeathed for life to Martha Josephine Nicholson, as indicated.

The answer filed by her guardian was stricken on demurrer, and a decree was then entered, construing the will in accordance with the contentions of the petitioner and excluding Hortense Lorraine from any share in the property remaining for disposition after the death of Martha Josephine.

It is thus seen that the case involves mainly two features of the will, the first relating to tract or lot 3, and the other to a portion of the residuary estate. In this division of the opinion, we deal with the claim relating to the land. Considering the third item of the will as applied to Martha Josephine, we find that in the first sentence the land was bequeathed to her for life, with remainder to her children and the descendants of deceased children, but that under the second sentence, if she died without child or descendants of child or children, then the share so bequeathed to her for life, was to go to and be equally divided among the "then living other grandchildren [of the testatrix] to be held by each for and during his or her life only, with remainder over to his or her children and descendants of dead children, as hereinbefore provided; the descendants of dead children taking per stirpes." Martha Josephine having died without children or descendants of children, it is the latter part of the item that is applicable here. The word "then" in the phrase "my then living other grandchildren" is clearly an adverb of time, referring to the death of such life-tenant; and therefore the entire phrase is limited not only to grandchildren, but also to such of them as were living at the death of Martha Josephine. Her brother George H. Nicholson was not then living. He had survived the testator, but died in 1936, about four years

before the death of Martha Josephine. He was survived by one child, the present claimant, Hortense Lorraine; but if we are to follow the clear and unambiguous terms of the will, Hortense Lorraine was not among those who should take in the latter event. She was not a grandchild of the testatrix, and therefore could not be one of the grandchildren mentioned in item 3. So far as the land is concerned, she has no claim or interest under the terms of item 3. Subject to the limitations therein prescribed, the share of Martha Josephine on her death without descendants went to the then living other grandchildren of the testatrix, namely, Paul O. Nicholson and Augustus G. Nicholson. See in this connection, *Darnell* v. *Barton*, 75 *Ga.* 377; *Luquire* v. *Lee*, 121 *Ga.* 624 (2) (49 S. E. 834); *Miller* v. *Dukes*, 150 *Ga.* 593 (104 S. E. 425); *Daniel* v. *Daniel*, 152 *Ga.* 610 (2) (110 S. E. 721); *Armstrong Junior College Commission* v. *Livesey*, 189 *Ga.* 825 (2), 829 (7 S. E. 2d, 678); *Bryant* v. *Green*, 187 *Ga.* 89 (199 S. E. 804); *Jefferson* v. *Bright*, 189 *Ga.* 866 (8 S. E. 2d, 21).

Counsel for the plaintiff in error argue to the contrary in view of the other items of the will, and the codicils. The sole object of interpretation is of course to ascertain the intention of the testatrix, and in seeking such intention the will must be construed as a whole; but it is also the law that if a "clause as it stands may have effect, it shall be so construed, however well satisfied the court may be of a different testamentary intention." Code, § 113-806; *Hertz* v. *Abrahams*, 110 *Ga.* 707 (36 S. E. 409, 50 L. R. A. 361).

Item 7 provided that if all of the grandchildren, that is the four who are named as life-tenants in item 3, should die leaving no child or children or descendants of child or children and the remainder estates created should fail for lack of remaindermen to take the same, "then the remainder estates and the entire estate should go to and vest in" designated charities. This item did not change the terms of any bequest contained in item 3. The death of George H. Nicholson leaving the child Hortense Lorraine, prevented forever a vesting in charity; and while it did thus happen that such vesting was effectually prevented by the birth of this very claimant and the subsequent death of her father, yet even if Hortense Lorraine had not been born, the property might still never go to charity, for either Paul O. Nicholson or Augustus G. Nicholson may die leaving a child, whereby such vesting will be prevented.

Item 7 merely specified the conditions upon which the property would go to charity, and contained no language which might be taken as qualifying item 3. See authorities cited infra as to change of an estate by subsequent item.

In the first codicil the testatrix expressed a desire that her estate should be "a benefit and a blessing" to her grandchildren. She also stated: "I make this codicil for the benefit of my grandchildren and their families." Hortense Lorraine was not a grandchild, although she is the daughter of a grandchild, and therefore might come within the language "their families." It is urged that the language of this codicil, especially that just quoted, manifests an intention on the part of the testatrix that the child of any deceased grandchild should stand in the place of its deceased parent for all purposes under item 3; and therefore that even though George H. Nicholson predeceased the life-tenant Martha Josephine, his daughter Hortense Lorraine should now take in his stead. In the same item of the same codicil, however, it is provided that "should any of my grandchildren die without leaving child or children, then I direct that such grandchild's interest be directed and bequeathed as set out in my original will." From this clause it is perfectly clear that the only change intended by this codicil was that instead of allowing the property to be delivered to the grandchildren, that is, the life-tenants, as might have been done under the original will, the executor should hold it in trust and pay them the income.

By the second codicil Augustus Gartrell Nicholson was given a *fee-simple estate* in that portion of the residue which in the original will had been left to him subject to stated limitations. See original item 5. Thus far it is not insisted that the second codicil has any bearing upon the present inquiry; but it is pointed out that in so changing the bequest to this grandchild, the testatrix used the language, "having in my original will devised to my said grandson, A. Gartrell Nicholson, a life-interest with remainder over at his death to his heirs," and it is insisted that this language shows an intention that any child of a deceased grandchild should represent his or her parent in determining title under item 3. As already stated, this portion of the second codicil referred only to the residuary estate devised in item 5, and it is limited also to the interest devised therein to A. Gartrell Nicholson. It states that

the testatrix originally devised to him a one-fourth interest in the residue, with remainder over at his death to his heirs. On looking again at item 5 and construing it in connection with item 3, it will be seen that, so far as it went, the codicil was in a popular sense substantially in accord with item 3 (compare Code, § 113-903(1); *Haddock* v. *Callahan Grocery Co.*, 163 *Ga.* 204 (3), 135 S. E. 747), and the main difference was that it did not embrace the further condition thereof, that if any one of the grandchildren should die without child or descendants of child or children, then the share bequeathed to him for life should go to and be equally divided between the then living other grandchildren. The difference thus appears to be one mainly of omission, and the omission is of such nature as not to involve a positive conflict. The codicil, of course, must be considered as a part of the will, and it is within the principle that a will must be considered as a whole; but it is also "an established rule not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil." *Thomas* v. *Owens*, 131 *Ga.* 248, 253 (64 S. E. 218). This latter rule was stated more fully in *Egleston* v. *Trust Co. of Georgia*, 147 *Ga.* 154 (93 S. E. 84), as follows: "Where a provision in a will is clear, certain, and definite in regard to a bequest, a codicil which is not certain and definite, its language being capable of some other reasonable construction, and which makes non-mandatory the terms of the original bequest only as to the specific form of fulfillment, and does not alter the mandatory character of the original bequest as to its general purpose, will not work a revocation." The principle is substantially the same as that under which it has been held that an estate clearly fixed and devised in one item will not be diminished or enlarged by a subsequent item, "unless the language and general context clearly and unmistakably discloses such to be the testator's purpose and intent." *Kimbrough* v. *Smith*, 128 *Ga.* 690, 693 (58 S. E. 23); *Moore* v. *Cook*, 153 *Ga.* 840, 843 (113 S. E. 526); *Comer* v. *Citizens & Southern National Bank*, 182 *Ga.* 1 (185 S. E. 77).

Where there are inconsistent provisions in the same will, the latter provision will prevail. Code, § 113-407. But there is no inconsistency between the original will and any part of either codicil, so far as the present issue is concerned. The share known as lot 3 went, on the death of Martha Josephine, to the "then liv-

ing other grandchildren" of the testatrix for life, with remainder as specified in item 3. It follows that the judge did not err in excluding Hortense Lorraine from any present participation in the proceeds of lot or tract 3. This conclusion accords with the decisions in *Vickers* v. *Stone,* 4 *Ga.* 461; *Fields* v. *Lewis,* 118 *Ga.* 573 (45 S. E. 437); *Baker* v. *Citizens & Southern National Bank,* 175 *Ga.* 161 (165 S. E. 21), and other authorities relied on by counsel for the plaintiff in error.

We think, however, that, as related to the interest of Augustus G., the judge erred in decreeing that should either Paul O. or Augustus G. die without child, children, or descendants surviving him, his share would become the property of "the other brother surviving him, for life," with remainder over as stated in the decree. It was also error to decree that there would be an intestacy as to the portion of lot 3 now taken for life by Augustus G. Nicholson only in case both Augustus G. and Paul O. should die leaving no child, children, or descendants surviving them. It should be remembered in this connection that this is not the life-estate originally bequeathed to A. G. Nicholson in the Oconee County land, but it is the part that has passed through Martha Josephine. It was only the original shares in the Oconee lands that were to go to the "then living other grandchildren" on the death of one of the life-tenants leaving no child or descendants of children. After such an original share comes into the possession of one of such surviving grandchildren through the death of another grandchild without issue, as does the interest of Augustus G., with which we are now dealing, the only provision for it in the will is that such survivor shall hold it for life only, with remainder over to his own descendants, if any. So this particular interest would not go to Paul O. Nicholson even if he should survive Augustus G., but would go only to the descendants of Augustus G. if he left children or descendants of children; and if he left none, there would be an intestacy. In the latter contingency, Hortense Lorraine apparently would be entitled to some inheritance. *Kemp* v. *Lewis,* 147 *Ga.* 254 (93 S. E. 404); *Armstrong Junior College Commission* v. *Livesey,* (supra).

We are not here concerned with any question as to whether the decree was correct in relation to Augustus Reaves, the minor child of Paul O. Nicholson, the decree providing that his interest is

contingent upon his surviving his father. There is no exception or complaint in his behalf.

■ We consider next the part of the residuary estate, the income from which was to be paid to Martha Josephine Nicholson for life, and at her death to be disposed of under item 5 of the will. This item is quoted in the preceding statement, but we quote it again here.

"Item 5. All the balance and residue of my estate I direct to be reduced to cash, from which the sum of five thousand dollars shall first be set apart, and the remainder of said residue shall then be divided into four equal shares; one of which together with said sum of five thousand dollars shall be by my executor invested to the best advantage, and the annual income arising therefrom be yearly paid over to my said granddaughter Martha Josephine Nicholson, during her life, and at her death the property or securities representing said investment is to go to and vest in and become the absolute property of the remaindermen mentioned in the 3rd item of this will. Each of the other three shares of the residue of my estate shall in like manner be by my executor invested in such property or securities as will effectually preserve the remainder estate herein created, and at the same time give the income from such investments annually to the three other named life-tenants in equal shares for life only, with remainders over to the remaindermen mentioned in the 3rd item of this will. Should such investments be in realty or such securities as will preserve said remainder estates, then the possession of the same shall be turned over to the life tenants, subject to all the terms, provisions and limitations hereinbefore and hereinafter set out."

It will be seen that this part of the estate, at the death of Martha Josephine, was to go to and become the *absolute* property of the remaindermen mentioned in the *third* item of the will. Who are these remaindermen? More specifically, is Hortense Lorraine Nicholson one of them, as insisted?

As to that part of the residue going for life to Martha Josephine (item 5), it would seem that the testatrix meant exactly the remaindermen intended for lot 3, bequeathed for life to the same person (item 3), except that when the estate reached any of the remaindermen in the course designed, it would as to such *residue* vest absolutely, instead of being subject to the limitations pre-

scribed as to the land only, in item 3. Under the first part of that item, the grandchildren were made life-tenants of the shares originally coming to them, and under the second part the survivors took an estate for life in the share of any one of them who had died without children or descendants of children. While none of them could ever take anything in fee simple under item 3, still both in that item and in item 5 they could for one purpose be considered as life-tenants and for another as remaindermen. "An estate for life may be either for the life of the tenant or for the life of some other person or persons." Code, § 85-601. A remainderman is one who is entitled to an estate "limited to be enjoyed after another estate is determined, or at a time specified in the future." § 85-701. The remainder thus may not necessarily be the entire estate that is left after the previous estate is determined. Accordingly, the grandchildren were life-tenants as to the shares in the land originally bequeathed to them; but as to the share of any one of them which should go to the survivors for life on the death of the former without children, such survivors might also be considered and appropriately referred to as remaindermen.

It is true that item 5, so far as it refers to the part of the residue which was to be used for the benefit of Martha Josephine Nicholson for life, did not in disposing of the remainder mention any contingency such as the death of Martha Josephine without descendants; but we think that as to such residue this contingency is necessarily implied in the statement that at her death said property is to become the absolute property of the remaindermen mentioned in the third item of the will, and that it must be considered in determining who should take as such remaindermen under item 5.

According to item 3, referring to the land, if Martha Josephine had not died without issue, then the share bequeathed to her for life would have vested in her child or children and the descendants of such of her children as might have died, such descendants taking per stirpes and not per capita; but she died without issue, and therefore the second part of item 3 becomes applicable in determining who are the remaindermen. That is to say, in such event the share bequeathed to her for life shall go to and be equally divided among the "then living other grandchildren." In the circumstances, the then living other grandchildren are the remainder-

men who are to take next in course of succession, on the death of Martha Josephine without issue. There are two of such living other grandchildren, Paul O. and Augustus G. Nicholson. While under item 3, referring to land, they would take in remainder only a life-estate, we use that item here only for the purpose of identification, because under item 5 the estate to be taken by such remaindermen is not an estate for life, but is an absolute estate, being the portion of the residue which was to be first applied for the benefit of Martha Josephine for life and at her death to become the absolute property of the remaindermen mentioned in item 3. According to the scheme of the testatrix with respect to this particular property, the descendants of Martha Josephine were preferred as remaindermen, and the surviving grandchildren would be entitled to take only as alternative or substitute remaindermen on the death of Martha Josephine without issue; but she having died without issue, they now take as such alternative or substitute remaindermen, and the estate is vested in them absolutely, as was held by the trial judge. This excludes Hortense Lorraine from any interest in such residue.

The testatrix apparently had a different scheme as to the disposition of the other three shares of the residuum referred to in item 5; but this fact does not change our conclusion with respect to the share taken for life by Martha Josephine, in view of the very different language relating to that share.

In *MacLean* v. *Williams,* 116 *Ga.* 257 (42 S. E. 485, 59 L. R. A. 125), it was said: "The intention of the testator is to absolutely control. Not only may the rules of grammar be entirely disregarded in order to carry into effect the manifest intention of the testator, but even well-defined technical terms of the law will be given an unusual meaning, or will be held to be meaningless, when it is clear from the provisions in the will that the testator did not use them in their technical sense, or when, to carry out his intention, it is necessary to entirely disregard such technical terms." It is also a well-recognized rule that where a will is susceptible of such interpretation, a provision creating a remainder shall be construed "so as to vest the estate indefeasibly at the earliest possible period of time." *Sumpter* v. *Carter,* 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274). See also *Cook* v. *Flanders,* 164 *Ga.* 279 (138 S. E. 218); *Baker* v. *Citizens & Southern National Bank,* 175 *Ga.*

161, 165 (165 S. E. 21); *Milner* v. *Gay,* 145 *Ga.* 858 (2) (90 S. E. 65); *Ward* v. *Ward,* 176 *Ga.* 849 (2) (169 S. E. 120).

It follows from what has been said, that the judgment must be affirmed except as to that portion of the decree relating to intestacy, to which reference was made in the first division of this opinion. Since the error there indicated may be corrected by a modification of the decree, without a new trial, the judgment will be affirmed with direction that the decree be so modified as to conform to the views expressed in the first division on the question of intestacy.

*Judgment affirmed, with direction. All the Justices concur.*